Myers, *et al. vs.* Safe Deposit and Trust Co. of Baltimore, &c.

(Decided 22nd January, 1891.)

---

ALEXIUS J. MYERS, and others *vs.* THE SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Trustee, and GENEVIEVE FORBES, &c. THE SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Trustee, and GENEVIEVE FORBES, &c. *vs.* ALEXIUS J. MYERS, and others.

*Power of Appointment under Will—Execution of Power—Administrator d. b. n. c. t. a.*

A testator gave the residue of his estate to his widow for life, and directed that the same, after her death, should pass to and become the estate of such of his children and grandchildren, or either, as she by will should nominate and appoint, and, in default of such nomination and appointment, the same should pass to his children and descendants in the same manner as if he had died intestate. HELD:

1st. That the whole estate on the determination of the life estate of the wife, vested by the will in the children and grandchildren of the testator, as remainder-men, subject only to the power of

Myers, *et al.* *vs.* Safe Deposit and Trust Co. of Baltimore, &c.

the wife of nominating and designating the persons of that class who should have the estate; and that her exercise of the power of appointment by creating trusts for life as to five-ninths of the estate, with remainders over, was unwarranted, and void.

2nd. That the design of the testator was that his entire estate should pass absolutely by his will, to such of his children and grandchildren as should be designated by his wife; and hence when the appointment of the widow as to five-ninths of the estate was invalid, her attempted execution of the power was wholly abortive even as to the remaining portion of the estate, three-ninths of which she appointed to be taken absolutely by a son, and the other ninth by a grandson of the testator.

Where the widow, as executrix of her husband, has passed an account in the Orphans' Court, wherein she has charged herself with the whole residue of the estate which was given to her for life, and the account has been approved by the Court, her administration of the estate is closed, and thereafter she holds not as executrix, but as tenant for life and as trustee for the remaindermen; and on her death the Orphans' Court has no power to appoint an administrator *d. b. n. c. t. a.* of the personal estate of her husband retained by her as life-tenant under his will, but the same must be accounted for by her executor or administrator in a Court of equity.

Appeals from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before Alvey, C. J., Miller, Robinson, Irving, Bryan, Fowler, McSherry, and Briscoe, J.

*John Hinkley,* and *Edward Otis Hinkley,* for the Safe Deposit and Trust Company, &c.

*S. Gross Horwitz,* and *Benjamin F. Horwitz,* for Alexius J. Myers, and others.

Irving, J., delivered the opinion of the Court.

Charles Myers died in June, 1862, having made his will in May preceding, which, after his death, was duly

admitted to probate in Baltimore City. He owned a large estate, real and personal, the residue of which he gave to his wife, Mary E. Myers, during her life, with large powers of selling, leasing, investing, and reinvesting; and after her death he provided as follows: "And immediately from and after the death of my said wife, Mary E. Myers, then my will is, and I so order and direct, that the residuum of my estate and property, whether the same consist of the property owned by me at the time of my death, or of the changes and investments subsequently made by her, shall pass to and become the estate and property of such of my children and grandchildren, or either, as she by her last will and testament, which she is declared competent, and is hereby fully authorized and empowered to make and execute, whether she be *sole* or *covert*, shall have named and appointed to take and have the same, and in default of such nomination and appointment by my wife, then my will is that the same shall pass to my children and descendants in the same manner as if I had died intestate."

Mrs. Mary E. Myers died in eighteen hundred and ninety, leaving a will in and by which, after reciting the power given her by her husband's will, she executes the power of appointment according to her view of her rights under it. Blending her own and her husband's estate, she divides each into three equal parts, and by the *first* clause she wills as follows: "First. I hereby name and appoint, and give, devise and bequeath unto my son, Alexius Joseph Myers, absolutely, one of said equal parts or shares of the estate and property aforesaid of my said husband, and also one equal part or share of my own individual estate aforesaid."

"Second, I hereby name and appoint, and give, devise and bequeath unto the Safe Deposit and Trust Company of Baltimore, a body politic and corporate, and its successors, one other equal part or share of the estate and

416 MARYLAND REPORTS.

Myers, *et al. vs.* Safe Deposit and Trust Co. of Baltimore, &c.

property aforesaid of my said husband, and also one equal part or share of my own individual estate aforesaid, in trust, nevertheless for the sole and exclusive use and benefit of my son, Ambrose M. Myers, for and during his natural life; the said Safe Deposit and Trust Company of Baltimore, after the payment of all public dues and other proper charge, and the necessary expenses involved in the execution of this trust, from time to time, to pay over the net income or revenue derived therefrom unto my said son, Ambrose M. Myers, for and during his natural life, and upon his death, when I direct that this trust shall cease and determine, I give, devise and bequeath said equal parts or shares unto any lawful child or lawful children he may leave, in equal proportions, with full power to the said Safe Deposit and Trust Company to change the investments of this trust estate whenever it shall appear advisable to do so. Should the said Ambrose M. Myers, however, die without leaving a lawful child or lawful children, then and in that event I give, devise and bequeath, after his death the one-half of said equal shares or parts of the property so as aforesaid devised and bequeathed in trust for the said Ambrose M., unto my son, Alexius Joseph Myers, and the other one-half thereof in manner following, that is to say:

(1) One equal third part thereof unto my grandson, Joseph Alexius Myers.

"(2) One equal third part thereof unto the Safe Deposit and Trust Company of Baltimore aforesaid, in trust, however, for the sole and separate use of my granddaughter, Mary Genevieve Forbes, the wife of George Forbes, subject precisely to the same conditions and provisions, restrictions and limitations, as are hereinafter prescribed and imposed in regard to the estate and property of my said husband and of my own individual estate made for the benefit of my said granddaughter, Mary Genevieve, and her children.

"(3) And the remaining equal third part thereof unto the Safe Deposit and Trust Company of Baltimore aforesaid, in trust, however, for the sole and exclusive use of my grandson, Francis De Coursey Myers, during his natural life, subject to like conditions, restrictions and limitations as are hereinafter prescribed and imposed in regard to the shares of the estate and property of my said husband, and of my own individual estate made for his enjoyment and benefit."

Of the remaining third part of her husband's estate and her own, she devises to Joseph Alexius Myers one-third part thereof absolutely. One-third part thereof she gives to the Safe Deposit and Trust Company with power to invest and reinvest and hold in trust for her granddaughter, "Mary Genevieve Forbes, wife of George Forbes, for and during her natural life, free from the control of her present or any future husband, the said Safe Deposit and Trust Company to pay unto the said Mary Genevieve Forbes, from time to time, upon her own separate receipt given therefor, the net profits or income arising therefrom for and during her natural life. And at the death of my said granddaughter, Mary Genevieve, when I direct this trust shall cease and determine, the said share or part of the property and estate shall be equally divided among her children. In case of the death of any child or children of my said granddaughter, the share of the child or children so dying shall be equally divided among the survivors; should my said granddaughter, however, die without leaving a child or children, then I give, devise and bequeath one-half of this share of the property aforesaid unto my grandson, and the brother of said Mary Genevieve, Joseph Alexius Myers, and the other one-half thereof unto the Safe Deposit and Trust Company of Baltimore, in trust for the sole use and benefit of my grandson, Francis De Coursey Myers, also a brother of said Mary Genevieve, subject to

27 v. 73.

the same conditions and limitations hereinafter contained and expressed in the devise and bequest here immediately following and marked ' 3 '."

"' 3.' And the remaining one equal one-third part thereof I give, devise and bequeath unto the Safe Deposit and Trust Company of Baltimore aforesaid, in trust nevertheless, for the sole and exclusive use and benefit of my grandson, Francis De Coursey Myers, for and during his natural life; the said Safe Deposit and Trust Company to pay unto him, the said Francis De Coursey Myers, from time to time, the net income or proceeds thereof, or arising therefrom for and during his natural life, and at his death, when I direct that this trust shall cease and determine, unto any lawful child or lawful children he may leave, in equal proportions, with full power to the said Safe Deposit and Trust Company to change the investments of this trust estate whenever it shall appear advisable to do so. And in case of the death of the said Francis De Coursey Myers without his leaving a lawful child or children, then unto his heirs-at-law; the share of his sister, the said Mary Genevieve, to be subject to the like conditions, limitations and trusts contained in the provisions for her benefit under this will."

The will provided that in case the Safe Deposit and Trust Company should not accept, then a competent Court should appoint a trustee.

Three bills have been filed, all of which appear in this record, which seem to have been consolidated, and one decree passed upon them from which these two appeals have been taken. The first is a bill of Alexius Joseph Myers and Ambrose M. Myers, the surviving sons of Charles Myers, asking a partition of the estate of their father.

The second a bill of Benjamin F. Horwitz and Alexius Joseph Myers, adm'rs *d. b. n. c. t. a.* of Charles Myers,

asking a construction of the will of Charles Myers, and a decision whether Mrs. Myers had the power under it which she has attempted to exercise.

And third, a cross bill by the Safe Deposit Company, the trustee appointed by the will of Mary E. Myers, to execute certain trusts created by Mrs. Myers respecting her own and her husband's estates, which she blended together, asking for a partition of the estate; that a Court would take jurisdiction of the trusts created; cause proper accounts to be taken; and for a receiver, which also was asked for by the bill of Alexius Joseph Myers and Ambrose Myers.

The decree adjudged 1st, all the appointments under the will of Mary E. Myers to be good; 2d, that the title of the adm'rs *d. b. n.* of Charles Myers to the residue of the estate retained by Mary E. Myers as life tenant in the settlement of her accounts in the Orphans' Court is good; 3d, that the real estate of Charles Myers should be settled in the Circuit Court, but his personal should be settled in the Orphans' Court; and, 4th that the personal estate of Mary E. Myers should be settled in the Orphans' Court.

Alexius and Ambrose Myers, plaintiffs in the first bill, and the adm'rs *d. b. n.* of Charles Myers, plaintiffs in the second bill, appeal from so much of the decree as sustains the appointments made by will of Mary E. Myers; and Mrs. Forbes and the Safe Deposit Company appeal from all the rest of the decree.

The case of *Torrance vs. Torrance, et al.,* 4 *Md.,* 12, which is relied on, in support of the contention that Mrs. Myers has properly executed the power conferred by her husband's will, does not seem to us to be controlling in this case.   The language of the will is materially different from that of the will of Charles Myers, and indicates a different purpose on the part of the testator.   The will in that case gave Mrs. Torrance a life estate in real

and personal property, with power to her "by deed, will, or otherwise to give, grant, convey, devise, or dispose of my said estate unto and among all or such of my children or their issue in such manner and proportion, and for such term and estate as she shall think fit. Nevertheless it is my will and I do order and direct that the respective shares or portions designed for my daughters shall be secured to them for life, free and clear of any control of their respective husbands, or without being liable to the payment of their debts; and after their decease for the benefit of their children and their legal representatives in equal proportions forever." Mrs. Torrance gave the sons shares absolutely, and created trusts for the daughters, which were upheld and properly so in our judgment. There was no restriction as to the quantity or quality of the estate to be given, nor as to the "manner" of doing it. The creation of trusts seemed to be the only way of carrying out the design of the testator respecting his daughters' interests effectually; and that is always the true test as to whether the power is well executed or not.

In the present case the testator, after giving his wife the entire residuum of his estate for life, declares that "immediately from and after the death of my wife, then my will is and I so order and direct that the residuum of my estate," &c., "shall pass to and become the property and estate of such of my children and grandchildren, or either as she by last will and testament * * * shall have named and appointed to take and have the same;" and "in default of such nomination and appointment" then the estate is to pass as if he had died intestate. It is very clear to our minds that the testator designed whoever the wife nominated to take an absolute estate in the personalty and fee in the realty. He gives the wife the simple power to name who shall take the estate, and she is given no power by implication to create a trust, and name

a stranger to take the title and hold in trust for the bene-
ficiaries she shall name. The whole estate on the deter-
mination of the life estate vested by the will of Charles
Myers in his "children and grandchildren" as remain-
der-men, subject only to the power of distribution or
nomination by the wife, or designation by her of the
persons of that class who should have the estate. The
wife therefore only had a special power. If she failed to
exercise it, the estate was to pass absolutely in fee to
testator's descendants, which reflects additional light as
to the kind of estate which the power was to operate
upon in the way of designating the taker thereof. *Wick-
ersham vs. Savage*, 58 *Pa. St.*, 365. Mrs. Myers took a
particular power under her husband's will, limited in
character, and not a general power. In that respect it
falls fully within the decision in *Wickersham's Case* just
cited, and *Horwitz vs. Norris*, 49 *Pa. State*, 217.

In *Pocklington vs. Bayne*, 1 *Brown's Chancery Reports*,
450, a marriage settlement conveyed lands "to trustees
in trust for Samuel Sharpe for life, remainder to Samuel
Pocklington, the husband, for life, remainder to the wife
for life, remainder to the use of all and every the child and
children of the body of the said Samuel Pocklington on
the body of Pleasance, his wife, begotten, or to be begot-
ten, in such parts, shares and proportions, and for such
estate and estates, not exceeding an estate or estates in
tail, and under such powers, provisoes, remainders, or
limitations over to some or one of the said children as
the said Samuel Pocklington should by any deed or wri-
ting, * * or by will direct and appoint, and for default
of such appointment, then to all and every the children,
to be divided share and share alike." Samuel Pockling-
ton by will limited one acre to his eldest son, William,
and his daughter the same for life and the life of the survi-
vor, with remainder "to such person as should be entitled
to the residue, and then limited the residue to his second

son, Henry, for life, remainder to trustees to preserve contingent remainders, remainder to his first and other sons in tail with remainders over." The Lord Chancellor decided this appointment was contrary to the nature of the power, and the estate must go as in default of appointment. So in this instance the method of execution is contrary to the nature of the power given.

Mrs. Mary E. Myers' will mentions the power of appointment given to her by her husband's will, and in professed execution thereof, appoints her son Alexius to take one-third of the estate absolutely, and her grandson, Joseph Alexius, one-ninth thereof absolutely. "Upon their face" these are good appointments; but as to the other five-ninths of the estate she created trusts for life with remainders over, which we have decided are not warranted by the power, and that part of the estate being unappointed effectively, must pass as if Charles Myers had died intestate.

This state of things raises the question whether the apparently well executed appointments must fail because of the failure of the donee of the power to well appoint the remaining portion of the estate. Ordinarily, according to Mr. *Sugden* in the 2d vol. of his work *on Powers*, page 202, the well appointed portions stand, and such appointees are not to be excluded from shares of the unappointed part, if they belong to the class taking, because of the default. A careful examination of the cases on which he rests this statement of the law does not conclusively settle the question for a case like this. Those cases are settlements where the donee of the power has more discretion in the matter than Mrs. Myers, who has the bare power of designation, which is given her by will; and her execution of the power is also by will. The intention of the respective testators, therefore, becomes a subject of inquiry and controlling importance.

If by following that statement of the law made by Mr. Sugden we would defeat the manifest intention of

Charles Myers in respect to his estate, and also the whole scheme and purpose of the will of Mrs. Myers, the donee of the power, we do not think we ought to do such violence to the intentions of those testators.

Manifestly Charles Myers designed his whole estate, as an entirety, to pass by his will to his children or grandchildren, who should be designated by his wife. She was to judge of the merits and needs of the objects of his bounty. She had the power of selection, and the power of exclusion, 1 *Chance on Powers, sec.* 1055; but she was to appoint the whole estate, to some of the objects, and for an absolute estate. It was upon the default of *such* an appointment that he wished the estate to pass as if he died intestate. If the donee of the power failed to make an appointment of the estate, then the division was to be according to the law of descent and the Statute of Distribution. He clearly did not mean that his wife should appoint a part and leave a part unappointed, and to pass as if he was intestate. To hold these partial appointments good and the rest ineffectual and void would defeat his wishes and will.

It is still clearer that Mrs. Myers, in executing the power, and making her appointments, made them on the theory and belief that she was properly executing the power conferred upon her. She evidently supposed that the trusts she created for life with contingent limitations over were as effectual and valid executions of her power, as the gifts to her son and her grandson. She did not design her son or her grandson to have any more of the estate than she named them to take; whereas if the appointments to them are upheld, and they are also admitted to share in unappointed portions, they will get largely more than a due and fair proportion of the estate; this was clearly not designed by Mrs. Myers, and we ought not to give effect to that which she did not contemplate as the result of her will. Inasmuch therefore

424 MARYLAND REPORTS.

Myers, *et al. vs.* Safe Deposit and Trust Co. of Baltimore, &c.

as we cannot support Mrs. Myers' will in the attempted execution of the power, as she has expressed it, we think that we ought to treat her effort to execute the power as wholly abortive, and to allow the whole estate of Charles Myers to pass as if he had died intestate. This will certainly do exact justice; for equality is equity, and will better meet the wishes of both testators than by supporting the partial appointments which are apparently good.

The second question for consideration is whether the administrators, *de bonis non cum testamento annexo,* of Charles Myers have the right to so much of the personal estate of Charles Myers as was by her retained as life tenant under the will of her husband.

Mrs. Myers as executrix of her husband passed an account in the Orphans' Court on the 24th August, 1864, and in it the following language is used: "Allowed said accountant for the residue of the estate retained by her as the widow of the deceased, for the purposes and subject to the conditions and provisions set forth in the will, consisting of, etc." After charging herself with the whole estate, and getting credit for proper charges against the estate for debts, funeral charges and proper costs of administration, she balances her account by getting allowance for the whole residue as given to her by the will for life, with the powers, conditions and provisions of the will of her testator. How does that differ from making the account show a balance and then by formal distribution of this balance make it *in name* a distribution to herself for life? Distribution is a matter *in pais,* unless the executor or administrator desires to make it the act of the Court for protection sake, and invokes the Court's action under sec. 137 of Article 93. It is the duty of the administrator or executor, under sec. 119 of that Article of the Code, to make distribution. He is to ascertain the parties entitled, and not

the Court, unless the Court's interposition is asked as
before stated. · Here there was no need of asking the
Court's aid. ⸱There was no doubt to be solved. The en-
tire residuum of the estate was given to Mrs. Myers, the
executrix for life. With it was given large powers of
sale, investment and reinvestment. In her account she
credits herself with the whole residue, and that account
was approved by the Orphans' Court. That was a most
effectual way of making the final distribution. There-
after she held not as executrix, but as tenant for life,
with the fiduciary powers conferred on her by her hus-
band's will. The estate was entirely closed. and her ad-
ministration was at an end; and unless there were other
assets discovered which had never passed into her hands,
as executrix, there was no occasion for an administration
*de bonis non.*

The case of *Binnerman vs. Weaver, et al.,* 8 *Md.,* 518,
conclusively settles this question in the case. In its
facts it is singularly like this case. The wife was given
a life estate, with certain trusts in favor of the children.
Her life estate was made, by the will, dependent upon
remaining unmarried. She was appointed executrix of
·the will and accepted the trust and administered. She
passed her account in the Orphans' Court, and took
charge of the estate as life tenant or *durante viduitate.*
She married again, and a petition was filed asking for a
revocation of her letters and the appointment of an ad-
ministrator *de bonis non.* Her letters were revoked by
the Orphans' Court upon that petition, and she was or-
dered to recharge herself with the amount which in her
account she had retained as life tenant, and to distribute
the same among those legally entitled to it. Upon ap-
peal this action and order of the Orphans' Court was·re-
versed, and the Court said, speaking through Judge LE-
GRAND, its then Chief Justice, "that the widow was en-
titled to a life estate in the property mentioned in the

will, subject to the trusts engrafted upon it. She cannot be required to recharge herself as directed by the order of the Orphans' Court. The settlement already made by her discharges her bond, and if she fails to perform her duty enjoined in the will the remedy is in a Court of equity.'' The petition was dismissed.

In view of the contention of counsel that Mrs. Myers had not passed a final account, and had not distributed the estate in her hands, and because it was called a "first account" and not a distribution, it could not be treated as a distribution, it is especially worthy of note, that the account passed by the executrix in *Binnerman vs. Weaver* is called a "first account," and yet this Court regarded and treated that "first account" which retained the balance of the estate under the will giving it to accountant for life, as a *final* account, and the entry in her account of such retention as an *effective distribution* to her as life tenant. This case so fully covers the question as to whether the Orphans' Court is to resume control of Charles Myers' estate after the death of Mrs. Myers, the life tenant, or whether a Court of equity must take charge of it and give effect to the will, that it is needless to cite other authorities on the subject. Mrs. Myers not only took the estate for life, but she took it charged with grave duties respecting it, to make it productive and increase its value by investment and re-investment, and with power to direct who of a certain class named by the testator should take it at her death. She was in effect *trustee* for the remainder-men, and the equity Court must see to it that the remainder-men get what they are entitled to under both wills, from the estate of Charles Myers. Mrs. Myers was given the power of changing investments, and to *sell* any part of the estate and reinvest the proceeds, so that she became and was necessarily a *trustee* for those who were to take after her, and a Court of equity only can take account of

what she did under that power.  So regarding herself, it appears that in March, 1872, she came into the equity Court of Baltimore City, and subjected herself to the jurisdiction of that Court over her trust under the will of her husband, Charles Myers.  The funds and property of that trust being what passed into her hands as life tenant of the residuum of her husband's estate, it is the duty of the Court now that the trustee is dead, to bring the legal custodians of her estate, her executors or administrators, into this Court to account for that portion of the estate in their hands which belongs to this trust; and that the part belonging to her individually may be separated from that which she held in trust for the remainder-men under the will of her husband.  To effect this separation a receiver ought to be appointed to receive from the administrators of Mrs. Myers so much of the estate as belongs to the trust she began to execute under the direction of the Court, and to disburse the same under the Court's order.  When that which is the property of Mary E. Myers personally is ascertained, her administrators with the will annexed should charge themselves with it in the Orphans' Court, and settle the same there, and distribute the same in accordance with her will.  The receiver or receivers appointed to take charge of the trust estate which was in the hands of Mrs. Myers, should be required to take charge of the real estate also, and collect the rents for the same until the Court can effect a partition of the same either actually or by decreeing a sale for the purpose, which should be done as soon as practicable.

Our conclusion is that the Court erred in sustaining any of the appointments made by Mrs. Myers' will. All should have been declared null, and the estate should have been decreed to pass to his descendants as the will provides in case of default in appointment.  The Court also erred in holding the administrators *d. b. n. c. t. a.*

of Charles Myers entitled to the possession of the personal estate of Charles Myers retained by Mrs. Myers as life tenant, and in directing them to account in the Orphans' Court therefor.   The Court was right in holding that the equity Court must take jurisdiction of the real estate, as we also hold that Court must of the residuum of Charles Myers' personal estate.   And the Circuit Court was right in adjudging Mrs. Myers' personal estate should be settled in the Orphans' Court. If she had real estate, that, of course, will be divided in equity according to her will.   The decree will be reversed in part, and affirmed in part, and the cause will be remanded that our views may be carried out by proper decree.

*Affirmed in part, and reversed in part.*

