ROBERT C. HOOPER & another, trustees, *vs.* HELEN HOOPER & others, executors & trustees.

SAME *vs.* SAME.

Suffolk.  Bristol.  January 29, 1909. — August 9, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Power.   Trust.   Deed,* Construction.   *Devise and Legacy.   Words,* "In such manner."

The power given by a deed of trust to a granddaughter of the donor, where the trustee is directed, upon the death of the donee to whom the income of the trust fund has been given during her life, to pay over and convey the fund to such of

her children and in such proportions as she may by will direct, is limited to designating those of her children who are to receive the property and stating the proportions in which it shall be paid over and conveyed to them, which necessarily implies a termination of the trust and an absolute estate in the distributees, so that an attempt by the donee to create equitable life estates in her children with powers of testamentary appointment and in default of their exercise remainders over is not a valid exercise of the power.

By a deed of trust, a donor created trust funds for the benefit of each of certain grandchildren for life, and provided that "upon the decease of either of said grandchildren, after his or her arriving at the age of twenty-five years, his or her portion of said trust fund and its accumulations is to be by said trustee paid over and conveyed to such of his or her children, if any, and in such proportions as he or she may, by any instrument in the nature of a will . . . direct," providing that a grandchild, thus dying, leaving a husband or wife might " give to such husband or wife the enjoyment for life of not exceeding one-third part of the income of his or her share of said trust property, and dispose of the residue of said share and of the remainder after the decease of said husband or wife in manner as aforesaid, and in default of any instrument of the character above mentioned, the share of each grandchild is to be distributed equally to and among his or her children, if any, otherwise the same is to be paid over and distributed to and among his heirs-at-law." A granddaughter, of those named and who was living at the time the deed was made, died after arriving at the age of twenty-five years, leaving a husband and one child, a daughter under age. By her will she exercised the power for the benefit of her husband in accordance with the terms of the deed, and, subject thereto, directed the trustee to divide the fund into as many shares as she should leave children, or the issue of a deceased child by right of representation, paying to each son at the age of twenty-five years and to each daughter at the age of twenty-one years $150,000 of the principal of the fund, if the trustee should deem it advisable, and when each son should arrive at the age of thirty-five years, or to each daughter after arriving at the age of twenty-one years, additional sums not exceeding in the aggregate $150,000, provided the trustee should deem it advisable, "and at his or her death to pay over, transfer and convey the principal of his or her said fund with any accumulated income, and such child shall by any last will or instrument in the nature thereof . . . direct and appoint; and in default of such will or instrument . . . to his or her children, then living, . . . but if he or she shall leave no such last will or instrument, and no issue him or her surviving, then . . . to those persons who are at that time my heirs by blood." *Held*, that the power of appointment given to the granddaughter of the donor, apart from the provision for her husband, could be exercised only in favor of the children of the donee and only to designate to whom of these children and in what proportions the property should go, that the attempt of the donee to create equitable life estates was not warranted by the power, and that there had been no valid exercise of the power, so that, subject to the provision for the husband of the donee, the granddaughter took the whole of the trust estate absolutely under the provision of the deed in default of any valid appointment.

A testator by his will created a trust for the benefit of one of his daughters, giving her the income of the trust fund during her life, and providing that, upon her decease, subject to a provision for her husband if he survived her, the trustees were " to pay over and distribute her share to and among her children in such manner and in such proportions as she may " by will direct. She died leaving a daughter under age, who was her only child and who was alive when the testa-

tor died. By her will she undertook to exercise the power under the will of her father by creating a trust for the benefit of her children in equal shares, giving to each the income of his or her share with the right to receive at certain times parts of the principal, if the trustees should deem this advisable, and with a power of testamentary appointment, providing that, in default of such appointment, the share should go to the children of such child then living, or, if such child should leave no will and leave no issue, that the trustees should transfer and convey the share to those persons who at that time should be the heirs by blood of the testatrix. The husband of the testatrix died before the decision of the case. *Held*, that the attempted exercise of the power of appointment by the daughter of the original testator gave to her daughter an interest far short of that to which she was entitled under the will of her grandfather, that such granddaughter, being the only person interested in the estate, should' receive the whole of it, and that there was no reason for the existence of the trust which her mother had attempted to create.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court, the first in the county of Suffolk on April 23, 1908, and the second in the county of Bristol, by consent, on April 24, 1908, as of April 6, 1908, the first by Robert C. Hooper and Francis C. Welch, as the trustees of an estate created under a deed of trust dated June 1, 1883, by Sarah L. Ames, late of Easton, for the use and benefit of her granddaughter Helen Ames Hooper for life and thereafter for other purposes, and the second by the same persons as the trustees of an estate given in trust by the will of Frederick L. Ames, late of Easton, for the use and benefit of his daughter Helen Ames Hooper for life and thereafter for other purposes, the first defendant in each of the cases being Helen Hooper, an infant under twenty-one years of age, the only child of Helen Ames Hooper, both bills praying for instructions.

The questions upon which instructions were prayed for were the following:

" 1. Shall the plaintiffs hold during the lifetime of said Robert C. Hooper, husband of said Helen Ames Hooper, the whole, one third, or any portion of the trust fund now in their hands which during the lifetime of said Helen Ames Hooper was held for her benefit under the provisions of said deed of trust of Sarah L. Ames? If so, to what person or persons is the income of said trust fund so held by them to be paid, and in what proportions?

" 2. Is it the duty of the plaintiffs forthwith to pay over the whole, two thirds, or any portion of said trust fund to Robert

C. Hooper and Francis C. Welch, either as executors of or as they are trustees under the third [in the second bill " fifth "] and seventh paragraphs of the will of said Helen Ames Hooper, or to any other person or persons? If so, whether the whole or a portion, and what portion, and to what person or persons?

"3. To what person or persons is the income derived from said trust fund held by your petitioners to be paid, and in what proportion?"

It was ordered that, as the two cases involved substantially the same interests, they should be heard together in the county of Suffolk. The cases came on to be heard before *Hammond*, J., who reserved them upon the respective bills and answers for determination by the full court, such decrees to be entered as justice and equity required.

The material portion of the deed of trust made on June 1, 1883, by Sarah L. Ames, the grandmother of Helen Ames Hooper, was as follows:

" Third. — To each of the following-named grandchildren of the party of the first part, namely, Helen Angier Ames [Helen Ames Hooper then twenty years old], Oliver Ames, Mary Shreve Ames, Lothrop Ames, and John Stanley Ames, as and when they shall successively arrive at the age of twenty-five years, there is to be paid by said trustee the income of their proportion of said trust fund and its accumulations, to be held and enjoyed by them during their respective natural lives, — payments to the granddaughters of said party of the first part to be made on their respective receipts, free from the interference or control of their husbands, if any, and said income and said payments to all said grandchildren to be free from the interference or control of their creditors, not subject to levy or attachment by the same, or in any other manner to diversion from the personal enjoyment of said grandchildren, nor is the same to be at any time subject to anticipation or assignment.

" Fourth. — Upon the decease of either of said grandchildren, after his or her arriving at the age of twenty-five years, his or her portion of said trust fund and its accumulations is to be by said Trustee paid over and conveyed to such of his or her children, if any, and in such proportions as he or she may, by any instrument in the nature of a will, executed in the presence of

two or more witnesses, direct; provided, however, that if either of said grandchildren shall die after arriving at said age, leaving a husband or wife, such grandchild may, by said instrument, give to such husband or wife the enjoyment for life of not exceeding one-third part of the income of his or her share of said trust property, and dispose of the residue of said share and of the remainder after the decease of said husband or wife in manner as aforesaid, and in default of any instrument of the character above mentioned, the share of each grandchild is to be distributed equally to and among his or her children, if any, otherwise the same is to be paid over and distributed to and among his heirs-at-law."

The material clause in the will of Frederick L. Ames, the father of Helen Ames Hooper, was as follows:

" On the decease of each of my daughters, after the arrival of one of my children at the age of twenty-five years, as aforesaid, said trustees are to pay over and distribute her share of the trust property to and among her children in such manner and in such proportions as she may by any instrument signed by her in the nature of a will in the presence of two or more witnesses direct, and in default of any such instrument to pay over and distribute the same equally among her children and grandchildren, if any, grandchildren to take the share which would have fallen to their parent, if alive, provided, however, that if any of my daughters shall thus die leaving a husband surviving, she may by any instrument of the character above set forth, provide for an annuity to be paid to said husband during his life to an amount not exceeding one-third of the income of her share of said trust property."

Helen Ames Hooper died on January 13, 1907. At the time of her death she was forty-four years of age. She left no grandchildren and only one child, said Helen Hooper, a minor daughter, then fifteen years of age.

The will of Helen Ames Hooper was proved on February 18, 1907. The third, fifth and seventh paragraphs of that will, in regard to which instructions were sought, were as follows:

" Third. Whereas by the Deed of Trust made by my grandmother, Sarah L. Ames, dated June 1, 1883, a fund is created for my benefit and the Trustee thereunder is directed upon my

decease after arriving at the age of twenty five years, to pay over and convey such trust fund so created for my benefit, and its accumulations, to such of my children, if any, and in such proportions as I may by any instrument in the nature of a will, executed in the presence of two or more witnesses, direct; provided, however, that if I shall die after arriving at said age, leaving a husband, I may by said instrument give to such husband the enjoyment for life of not exceeding one third part of the income of said trust property so held for my benefit and dispose of the Residue of said share and of the remainder after the decease of my said husband in manner aforesaid and

" Whereas I have arrived at said age of Twenty five years,

"Now in the exercise of said power, I hereby direct that an annuity of one third of said trust property shall be paid to my said husband, during his life,

" And at his decease said one third of said trust property shall be deemed to have formed part of the trust fund created by the seventh paragraph of this will and be distributed or held as therein set forth ; but if by the terms of said deed I have not the power to appoint the said fund in Trust for the benefit of my issue, then I direct the trustees or trustee acting under this paragraph of my Will to pay over, transfer and convey the principal of said fund so held for his benefit in equal shares, to my children then living, the issue of a deceased child however, to take its ancestors share by right of representation.

" And I give, devise, bequeath and appoint the remainder of said trust fund so created for my benefit, by said deed, or the whole thereof, if I shall survive my said husband, to the trustees or trustee then acting under the said seventh paragraph of this Will, to be distributed or held as in said seventh paragraph set forth ; but if by the terms of said deed I have not the power to so appoint the same in Trust for the benefit of my issue, then I give, devise and bequeath the same in equal shares to my children living at the date of my decease, the issue of any deceased child however, to take its ancestors share by right of representation."

" Fifth.　Whereas by the will of my Father, Frederick L. Ames, a fund is created for my benefit, and the Trustee thereunder is directed on my decease after arriving at the age of

twenty five years to pay over and distribute the same to and among my children in such *manner* and in such proportions as I may by any instrument signed by me in the presence of two or more witnesses direct; provided however, that if I shall thus die leaving a husband surviving I may by any instrument of the character above set forth, provide for an annuity to be paid to my said husband during his life, to an amount not exceeding one third of the income of said trust property.

"Now in the exercise of said power I hereby direct that an annuity of one third of the income of said trust property shall be paid to my said husband during his life; and at his decease, the said one third of said trust property shall be deemed to have formed part of the trust fund created by the seventh paragraph of this will and be distributed or held as therein set forth.

"And I give, devise, bequeath and appoint the remainder of said trust fund so created for my benefit by the said will of my father or the whole thereof, if I shall survive my said husband, in the following *manner*, viz., to the trustees or trustee then acting under the said seventh paragraph of this will to be distributed or held as in said seventh paragraph set forth."

"Seventh.  All the rest, residue and remainder of my estate, real and personal, of which I shall die seised and possessed, and to which I shall be in any way entitled at the time of my decease and over which I now or may then have any power of appointment, and which I have not or cannot appoint to my said husband, or if I shall survive my said husband all the estate herein given and appointed to or for his benefit (except the personal property specifically bequeathed by the second paragraph of this will as therein set forth, if my said husband does not survive me) I give, devise and bequeath to my said husband and to Francis C. Welch, and their and his heirs and assigns, in Trust, nevertheless, to and for the following uses, intents and purposes, viz: to divide the same into as many equal shares or portions, the same being designated, as I shall leave children surviving me counting also for one of said shares or portions the issue then living of every my child then deceased; and to pay over, transfer and convey free of trust to such issue of each deceased child respectively the share or portion so set apart for him or her, such issue taking by right of representation and to

continue to hold the share or portion so set apart for each of my children then living, and to pay to each son from the principal of the fund so set apart for his benefit when he shall arrive at the age of twenty-five years or at any time or times thereafter, sums not exceeding in the aggregate the amount of one hundred fifty thousand dollars, provided the trustees or trustee, acting from time to time hereunder shall deem it advisable; or the trustees or trustee may pay the said sum in one amount, if they or he shall deem it advisable; and to pay to each son from the principal of the fund so set apart for his benefit when he shall arrive at the age of thirty five years or at any time or times thereafter, additional sums not exceeding in the aggregate the amount of One hundred and fifty thousand dollars, provided the trustees or trustee acting from time to time hereunder shall deem it advisable or the trustees or trustee may pay said additional sum in one amount, if they or he shall deem it advisable; and to pay to each daughter from the principal of the fund so set apart for her benefit when she shall arrive at the age of twenty one years or at any time or times thereafter, sums not exceeding in the aggregate the amount of One hundred and fifty thousand dollars provided the trustees or trustee acting from time to time hereunder shall deem it advisable, or the trustees or trustee may pay the said sum in one amount if they or he shall deem it advisable; and to pay the nett income of each of said funds so held for the benefit of each of my children, to such children respectively, during his or her life; and at his or her death to pay over, transfer and convey the principal of his or her said fund with any accumulated income, as such child shall by any last will or instrument in the nature thereof attested by two or more competent witnesses, direct and appoint; and in default of such will or instrument or so far as the same shall fail to operate, to pay over, transfer and convey the same to his or her children, then living, the issue however of any deceased child taking its ancestors share by right of representation, but if he or she shall leave no such last will or instrument, and no issue him or her surviving, then to pay over, transfer and convey the same to those persons who are at that time my heirs by blood, provided however, that if any such heir has then a fund held in trust for his or her benefit under this will, his or her share of such distri-

bution, shall be added to and form part of the fund herein created for his or her benefit."

The case was submitted on briefs.

*H. H. Newton,* for the guardian *ad litem* of Helen Hooper.

*S. C. Bennett,* for the executors and trustees under the will of Helen Ames Hooper.

HAMMOND, J.  1.  As to the property held by the petitioners under the deed of Sarah L. Ames.  The power of appointment contained in this deed is not a general, but a limited power. Leaving out of view the provision for the husband of the donee of this power, about which no question is raised in this case, the persons to whom the property may be appointed are the children of the donee.  The appointment cannot be made to any person not her child.  She has only the power to say to whom of these children and in what proportions the property shall go.

A strong argument has been addressed to us in favor of the proposition that under such a power an equitable estate may be created for the life of the appointee with power by will or deed or both to direct where it shall go upon his decease.  And there is no doubt, as stated by Knowlton, J., in *Thayer* v. *Rivers,* 179 Mass. 280, that " it has been held that one having an estate with a power of appointment under which he may give an absolute interest, or may put limitations on the use and enjoyment of that which otherwise would be such an interest, properly may exercise the power by giving one substantially the whole interest in the property and the whole control of it, in the form of a right of personal use and enjoyment during his life, with a right, by deed or will, to appoint persons who shall have it after his death.  It has been held in some of these cases that it makes no difference whether the right of disposition in·the object of the power to whom the property is appointed by the donee of the power, is by a deed or will, or by will alone.  *Morse* v. *Martin,* 34 Beav. 500.  *Slark* v. *Dakyns,* L. R. 10 Ch. 35."

But of course the nature of the power and of the estate which can be created in its exercise must be in every case one of construction.  It is to be noted that the donee of the power is not the owner of the estate.  The interest of the appointee as finally determined is founded upon the deed of the donor.  The lan-

guage of this power is that upon the decease of the equitable life tenant, the trustee shall " pay over and convey " the property " to such of her children . . . and in such proportions" as she may by will direct. She is simply to select the persons among the class designated, and is to determine the proportion each one shall take. This language evidently implies a termination of the trust and an absolute estate in the distributees. There is no hint of any other kind of estate, nor any indication of a power in the donee to create new trusts. And this view becomes all the more emphatic when the provision for the husband is considered; for that provision shows that when the donor of the power thought of an equitable estate she used language appropriate for that purpose. In view of the general nature of the deed, the fact that the power in the donee is limited to stating the proportions in which this property should be paid over and conveyed, we are of opinion that the attempt of the donee to create equitable life estates was not warranted by the power, and that there has been no valid exercise of the power. See *Pepper's Appeal*, 120 Penn. St. 235; *Myers* v. *Safe Deposit & Trust Co. of Baltimore*, 73 Md. 413; *Wickersham* v. *Savage*, 58 Penn. St. 365; *Smith's Estate*, 4 Weekly Notes of Cases, (Penn.) 265; *Hood* v. *Haden*, 82 Va. 588.

Since these cases were argued, Robert C. Hooper has died; and, inasmuch as the defendant Helen Hooper is the only child of the donee and there is no issue of any deceased child, she under the deed takes the whole estate absolutely in default of any valid appointment.

The conclusion to which we have come on this point renders it unnecessary to allude to other considerations, including the matter of the rule against perpetuities, which it is contended by counsel would lead to the same result.

2. As to the property held by the trustees under the will of Frederick L. Ames. Here the language creating the power is different from that in the deed, and perhaps the scope of the power is to a certain extent less circumscribed as to the quality of the estate which may be created under it. Leaving out of view the provision which may be made for the husband for life, concerning which provision no question arises, the will provides that upon the decease of the equitable life tenant the trustees

are " to pay over and distribute her share of the trust property to and among her children in such manner and in such proportions as she may " by will direct. It will be seen that this power is not general and unlimited. Even if it be conceded in behalf of the trustees under the will of Mrs. Hooper that the power authorized the creation of trust estates, (see *Busk* v. *Aldam*, L. R. 19 Eq. 16, and cases cited; *Phipson* v. *Turner*, 9 Sim. 227,) still the class of persons to whom the donee could appoint is distinctly defined. Whatever the manner in which the distribution was to be made, whether the estates were to be for life or a greater estate, and whether they were to be legal or equitable; — in a word, whatever the quantity or quality of the estates, the donor could make no person a beneficiary except her children.

Possessing this power, Helen A. Hooper undertook to exercise it by her will. She appointed the fund to trusts, " to divide the same into as many equal shares or portions . . . as I shall leave children surviving me counting also for one of said shares or portions the issue then living of every my child then deceased; and to pay over, transfer and convey free of trust to such issue of each deceased child respectively the share or portion so set apart for him or her; such issue taking by right of representation; and to continue to hold the share or portion so set apart for each of my children then living, . . . and to pay to each daughter from the principal of the fund so set apart for her benefit when she shall arrive at the age of twenty-one years or at any time or times thereafter, sums not exceeding in the aggregate the amount of one hundred and fifty thousand dollars provided the trustees or trustee acting from time to time hereunder shall deem it advisable, or the trustees or trustee may pay the said sums in one amount if they or he shall deem it advisable; and to pay the nett income of each of said funds so held for the benefit of each of my children, to such children respectively, during his or her life; and at his or her death to pay over, transfer and convey the principal of his or her said funds with any accumulated income, as such child shall by any last will or instrument in the nature thereof attested by two or more competent witnesses, direct and appoint; and in default of such will or instrument or so far as the same shall fail to operate, to pay

over, transfer and convey the same to his or her children, then living, the issue however or [of] any deceased child taking its ancestors share by right of representation, but if he or she shall leave no such last will or instrument, and no issue him or her surviving, then to pay over, transfer and convey the same to those persons who are at that time my heirs by blood, provided however that if any such heir has then a fund held in trust for his or her benefit under this will, his or her share of such distribution shall be added to and form part of the fund herein created for his or her benefit."

The exercise of the power being testamentary did not become operative until the death of Mrs. Hooper; and it must be read in the light of the circumstances existing at that time. She left no grandchildren and only one child, the respondent Helen Hooper, a minor then fifteen years of age. Although the language of the will is general and applicable to more than one child, still, construed as of the time when it took effect, it is applicable only to Helen, who was alive at the time of the death of Frederick L. Ames, her grandfather. She was the only member of the class to whom the donee of the power could appoint the fund. If the power had been only to designate the proportions in which the trustees were to pay over and distribute, then, since the class among whom the distribution is to be made consists of but one person, the power would seem to have reached the vanishing point. As was said in *Pepper's Appeal*, 120 Penn. St. 235, "With but one member of the class in existence there can be but one distribution, and under such circumstances it is difficult to see the utility of any appointment whatever."

It is contended however by the trustees under the will of Mrs. Hooper that the phrase " in such manner " authorizes the creation of a trust estate, at least for the life of Helen, who was alive at the time of her grandfather's death; and that since she has the income for life with the further right to receive from time to time from the trustees certain parts of the principal, and with a general power to appoint by will to whomsoever she pleases, she in fact and in law has the whole beneficial estate in the manner authorized by the power. And they cite several cases including *Morse* v. *Martin*, 34 Beav. 500 ; *Slark* v. *Dakyns*,

L. R. 10 Ch. 35; *Bray* v. *Bree*, 2 Cl. & Fin. 453, more fully reported in 8 Bligh, (N. S.) 568, affirming on appeal a decision of Vice-Chancellor Shadwell, reported under the title of *Bray* v. *Hammersley*, 3 Sim. 513; *Torrance* v. *Torrance*, 4 Md. 11; *Busk* v. *Aldam*, L. R. 19 Eq. 16.

An examination of the cases however shows that the powers are much more elastic than in this case, and the decisions in favor of the validity of the power are based in most, if not all, of the cases not upon the doctrine that a beneficial life estate in a trust fund with the power of appointment by will together make the whole beneficial estate, but upon the peculiar language of the power as to the character of the estates which may be created and as to the limitations and restrictions which may be imposed by the donee.

It was the intention of Frederick L. Ames that at the death of Mrs. Hooper her share should go equally to her children and grandchildren (by right of representation) unless she should by will appoint to the contrary, but that she could appoint the manner and proportions. Yet, subject to a provision for her husband not here material, it should all go to the class of which it now appears Helen is the only one. Whether she gets it from the will of her grandfather in default of an appointment under the power, or gets it under the appointment contained in her mother's will, she is to get it all. She shares with no one. Under the attempted execution of the power she has absolutely only a beneficial life estate. It is true that under this attempted execution she may receive certain portions of the principal, but only if the trustees think it advisable, while over the rest of the principal she can have no control during her life, even if necessary for her own needs. Her power over it is to be exercised only by will.

It is clear that such an interest is far short of the interest to which she is entitled under her grandfather's will, either in default of an appointment, or in case of one properly made under the power. Even if the beneficial interest for life might be good under the attempted appointment, yet, since in any event she is entitled to the whole property, there is no reason why she, being the only person interested in the estate, should not receive the whole. There is no reason for the trust. See *Pepper's*

*Appeal,* 120 Penn. St. 235; *Myers* v. *Safe Deposit & Trust Co.*
73 Md. 413; *Wickersham* v. *Savage,* 58 Penn. St. 365; *Horwitz*
v. *Norris,* 49 Penn. St. 213.

It becomes unnecessary to consider the other objections raised
against the validity of the exercise of this power.

Robert C. Hooper having died, the first question propounded
by the petitioners becomes immaterial.

The answer to the second and third questions is that Helen
Hooper is entitled to receive both of the funds absolutely and in
her own right and that it is the duty of the petitioners to pay
them over to her.

*Decree accordingly.*