THE UNION AND NEW HAVEN TRUST COMPANY, EXECUTOR AND TRUSTEE (WILL OF PAUL H. TAYLOR) *v.* HELEN S. TAYLOR ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 2—decided November 8, 1946

*Arthur W. Chambers,* for the plaintiff.

*Allan K. Smith,* for the defendants Helen S. Taylor et al.

*Reinhart L. Gideon,* for himself as guardian ad litem for Paul T. Allen et al.

*Douglass B. Wright,* with whom, on the brief, was *Roger W. Davis,* for the defendant Hartford National Bank and Trust Company, administrator, c.t.a., and trustee.

*James W. Cooper,* with whom were *Donald F. Keefe* and, on the brief, *Crenna Sellers,* for the defendant Second National Bank of New Haven, trustee.

MALTBIE, C. J.   The questions involved in this reservation concern the validity of certain provisions of the will of Paul H. Taylor in which he purported to exercise powers of appointment under the will of his father and that of his mother and under a trust inter vivos established by his father.

The will of the father created two separate trusts and provided as to each of them that a portion of the income was to be paid to Paul during his life; that at his death "the principal of said trust fund previously held for his benefit shall be paid over" by the trustees "to the Heirs-at-law (exclusive of his wife) of my said son Paul in such amounts and in such manner as my said son shall by his last will and testament duly executed in writing name, designate and appoint to take the same"; and that if the son failed to exercise the power of appointment the trustees were at his death to "pay over and deliver the principal of said fund to his heirs-at-law (exclusive of his said wife), or should my said son not survive me, to those persons who would have been his heirs-at-law (exclusive of his said wife) had he died at the same time as my death, absolutely and free of trust." Paul's mother in her will created a trust, the income of which was to be paid to him during his life and at his death the trustee was directed to pay over and deliver "the principal" of the fund "to his issue and widow or such of them as may survive him and as he may select, in such manner and in such amounts as my said son shall by his last will and testament duly executed in writing, name, designate and appoint to take the same"; but, in case the son failed to survive her or to exercise the power, one-third of "said fund" was to continue in trust and the net income was to be paid to his widow; and the balance of the fund, including at the death of the wife the principal of the one-third held in trust for her, was to "vest in his heirs at law (exclusive of his said wife), or, should he die before me, in those persons who would have been his heirs

at law (exclusive of his said wife) had his death occurred at the same time as my own."

In his will, Paul, stating that he was exercising the power of appointment given him in his father's will, directed that the fund established by his father should be divided into as many equal shares as he left children who survived him or who had died leaving issue and that the net income of one share should be paid to each child during his life; that at the death of such child the fund held for him or her should be distributed and paid over "outright and free from the trust to such beneficiaries as such child by will may appoint and designate"; and that in the absence of such appointment the fund should be distributed to the heirs-at-law of such child. Paul also in his will, purporting to exercise the power of appointment given him by his mother, directed that the trust fund created by her should be continued to be held by the trustee and the income paid to his widow during her life; that if she did not survive him, or at her death if she did, the fund should be divided into as many equal shares as he had children then surviving or children who had died but left issue; that the income of one of these funds was to be paid to such child during his life; that at the death of each child the "entire principal" of the fund of which he or she had enjoyed the income should be distributed by the trustee "outright and free from the trust to such beneficiaries as such child may appoint and designate"; and that "if there be no such appointment" the trustees were to distribute the fund to the heirs-at-law of the child or, as provided later in the same paragraph, to "the issue of said child per stirpes."

The question presented by these provisions of

Paul's will is this: Where the father directed that "the principal" of the funds should at the death of Paul be paid over and delivered to his heirs-at-law (exclusive of his widow) in such amounts and manner as he might appoint, and where the mother provided that the principal of the trust created by her will should at Paul's death be paid over and delivered to his issue and widow, or such of them as might survive him and as he might select, in such manner and amounts as he should appoint by will, could Paul validly provide in his will that the persons in the classes designated by his father and mother within which he was authorized to make an appointment should receive none of the principal of the funds but should have only the income for life, and that the principal should be distributed only at their deaths, and then to such beneficiaries as the child might designate or, in want of appointment, to the child's heirs-at-law or issue?

To state the question goes far toward answering it. In the first place, we cannot escape the conclusion that both father and mother intended that at the son's death there should be a distribution of the principal among the persons designated in their wills; but the result of the purported exercise of the power by Paul would be that the principal would never be paid to any of the persons so designated and that they would at most receive income during their lives. Such a result would run directly counter to the intent of the parents. In the second place, the father clearly intended that the heirs-at-law of the son "exclusive of his wife," and the mother clearly intended that some or all of the issue and the widow of the son, should be the ultimate beneficiaries of the property; but Paul in his will provid-

ed that at the death of his children they might appoint those to whom the principal should be paid, and he placed no restriction upon the persons who might receive it, permitting the appointment to be to "such beneficiaries" as the child by will might designate. This might well bring about the result that the principal of the funds would ultimately go to persons entirely outside the classes among the members of which both father and mother intended the principal to be distributed.

Counsel who contend that Paul's exercise of the powers of appointment was valid argue that in two respects the terms of the will support their contention. One is the provision in the wills of both father and mother that the son might provide for the distribution of the principal among those designated not only in such amounts but also "in such manner" as he might direct. It is not easy to determine just what is meant by the quoted words. They would include, no doubt, a provision that the property in which the fund was invested be sold and the distribution be made in cash or that certain investments be distributed to one beneficiary and others to another, or it may be that they might justify a reasonable deferment of the distribution in whole or in part. "The word 'manner' ordinarily refers to the mode or way in which a thing is to be done and does not include the result to be accomplished." *Curry* v. *Civil Service Commission of Bridgeport,* 125 Conn. 344, 345 note, 5 A.2d 846; *Brown* v. *O'Connell,* 36 Conn. 432, 447. In this instance the use of the word cannot be taken so to enlarge the power given the son as to permit him to dispose of anything other than the principal of the fund or give that principal to others than those designated to receive it

in the wills of the father and mother; it can only empower him to determine the method by which that principal shall be distributed to those entitled to it. The other matter referred to by counsel is the fact that in the father's will the direction that the principal of the fund should be paid over and delivered to such of the son's heirs-at-law "exclusive of his wife" as the son might designate does not state that the beneficiaries shall receive the property free of the trust, but in the provision for distribution in the event of the son's failure to exercise his power of appointment the testator added that the recipients should take the property "absolutely and free of trust." Any inference that can be drawn from this fact is too weak to justify a disregard of the clear intent expressed by the testator as to the disposition of the principal.

A power of appointment cannot transcend the limits upon it set by the donor; *O'Brien* v. *Flint,* 74 Conn. 502, 507, 51 A. 547; *Allen* v. *Davies,* 85 Conn. 172, 176, 82 A. 189; and it is our conclusion that Paul did not validly exercise the powers of appointment given him in the wills of his father and mother. The statement that the donee of a power to appoint to an absolute estate may appoint to a lesser one is always subject to the qualification that he cannot do so if that would bring about a violation of the intent of the donor of the power. *Matter of Kennedy,* 279 N. Y. 255, 261, 18 N. E. 2d 146; note, 121 A.L.R. 139; and see *O'Brien* v. *Flint,* supra. The powers of appointment given the son, restricted as they were in regard to those who might benefit by them, were special and not general powers; 1 Simes, Future Interests, § 246; and the right of the donee of a special power to dispose of the property in such

a way as to give to another a power to appoint is subject to the same qualification. Restatement, 1 Trusts, p. 66; 3 Property, § 358; 1 Simes, op. cit., § 264. Under neither of these propositions can the exercise of the powers by the son in this case be justified.

In most of the decisions which present situations having a general similarity to the one before us and in which the appointments were upheld, the instrument creating the power used much broader terms than occur in the wills before us. See note, 1 Scott, Trusts, p. 138. Industry of counsel has brought to light a few cases which have reached a conclusion which cannot be altogether reconciled with that we have stated. *Lewis's Estate,* 269 Pa. 379, 382, 112 A. 454, decided the question rather cursorily, and it is very difficult to reconcile the case with the earlier one of *Wickersham* v. *Savage,* 58 Pa. 365, 370, not mentioned in the *Lewis* decision, and with the subsequent holding of the court in *Johnson's Estate,* 276 Pa. 291, 295, 120 A. 128, both of which cases tend to support the conclusion we have reached. *Equitable Trust Co.* v. *Foulke,* (Del. Ch.) 40 A.2d 713, was the decision of a chancellor, not of an appellate court. *Matter of Hart,* 262 App. Div. 190, 28 N.Y.S. 2d 781, was a decision in which the members of the court divided three to two and the majority opinion sought to distinguish *Matter of Kennedy,* supra, upon grounds which seem to us rather illusory. On the other hand, our conclusion is fully supported by *Matter of Kennedy,* supra; *Hooper* v. *Hooper,* 203 Mass. 50, 58, 89 N. E. 161; and *Myers* v. *Safe Deposit & Trust Co.,* 73 Md. 413, 420, 21 A. 58.

The deed of trust of the father directed that upon his death the fund should be divided into separate

trusts, with only one of which we are concerned. As to it the instrument provided that the net income should be paid to Paul during his life and that "at his death the principal shall be paid to the Executor of his will to become and be administered as a part of his estate in accordance with the provisions of his will, but if there be no will, said fund shall be distributed by my Trustee as intestate property to the then heirs-at-law of said Paul H. Taylor." This provision contains alternatives and, as Paul left a will purporting to dispose of the fund, we are concerned only with the first. Under that provision it would be the duty of the trustee to ascertain at the death of Paul whether he left a will and if he did to deliver the fund to the executor named in it. Property may constitute a part of the estate of a deceased person to be administered as such although he had no title to it in his lifetime. 2 Woerner, American Law of Administration (3d Ed.) § 306; and see *Bristol Savings Bank* v. *Holley,* 77 Conn. 225, 226, 58 A. 691. The example most frequently occurring is life insurance payable to the estate of the insured, or to the executor or administrator of his estate. *Keller* v. *Gaylord,* 40 Conn. 343, 347; *Harding* v. *Littlehale,* 150 Mass. 100, 105, 22 N. E. 703; *Winterhalter* v. *Fund Assn.,* 75 Cal. 245, 249; 7 Cooley, Briefs on Insurance (2d Ed.), p. 6335. The trust terminated at the death of Paul, and the fund, when delivered to the executor of his estate, would vest in the executor as such and would be a part of Paul's estate. There is no restriction in the deed upon the way in which Paul might dispose of the property in his will. He, in fact, dealt with it in the same way as he attempted to dispose of the trust fund created by his mother. The only question

which could arise would be whether or not the Rule against Perpetuities was violated. We do not need to consider whether, if the deed of trust had created a power of appointment in Paul, he, in exercising it, made provisions which were contrary to that rule. Its application to appointments is largely governed by the fact that an appointee derives his title from the will of the creator of the power, and that title does not vest in the donee and the property is not part of his estate. *McMurtry* v. *State,* 111 Conn. 594, 601, 151 A. 252; see *Bartlett* v. *Sears,* 81 Conn. 34, 41, 70 A. 33; *Heald* v. *Briggs,* 83 Conn. 5, 10, 74 A. 1123. As in this instance the ultimate beneficiaries would receive the property as a part of Paul's estate, the period of the rule would be measured not from the death of the father, but from that of Paul. Under the latter's will all the life estates given vested at once upon his own death; the provision in the will that at the deaths of the life tenants the property should be paid over "outright and free from the trust" to such beneficiaries as they might designate leaves no doubt that the life tenants in exercising the power given under Paul's will must provide for the immediate distribution of the principal at their deaths. Every interest created by Paul's will with reference to the property would, therefore, vest within a life or lives in being at his death and twenty-one years thereafter, and there is no violation of the Rule against Perpetuities. *Hill* v. *Birmingham,* 131 Conn. 174, 177, 38 A.2d 604. It follows that Paul made a valid disposition of the fund created by the deed of trust.

To so much of questions 1 and 3 propounded in the reservation as asks whether the provisions of the will of Paul H. Taylor purporting to exercise

the powers of appointment given him in the wills of Franklin H. Taylor and Sarah L. Taylor are valid, we answer "No." To so much of question 5 as asks whether the provisions of the will of Paul H. Taylor disposing of the fund created by the deed of trust of Franklin H. Taylor are valid and effective, we answer "Yes." The remaining questions propounded require no answer.

No costs will be taxed in this court to any party.

In this opinion the other judges concurred.