STORRS, C. J., HINMAN, ELLSWORTH, SANFORD AND WALDO, JS.

### RANSOM HINE vs. JAMES E. BELDEN.

The act of 1857, which provides that "all proceedings brought to obtain the forfeiture of any liquor under the 12th and 13th sections of the act for the suppression of intemperance, shall be held to be proceedings *in rem* and not criminal proceedings, and shall be proceeded with as civil and not as criminal proceedings," applies to proceedings pending when the act was passed.

Where, in such a proceeding, a party had been cited to appear before a justice of the peace on a certain day and show why certain liquors seized should not be forfeited, and the act above referred to took effect between the time of issuing the citation and the day appointed for the trial, and the justice was absent from the town on the day appointed, it was held that the justice had authority, on his return, to issue a notice to the defendant, under a statute relating to civil suits, appointing another day for the trial, and to proceed on the day so appointed with the trial of the case.

Whether, before the passage of the act of 1857, such proceedings were civil or criminal in their character : *Quere.*

TROVER for certain liquors and the vessels in which they were contained.

The defendant had seized the liquors, which belonged to Hine, on the 19th day of June, 1857, as a public officer, upon a warrant issued by Hiram Foster, a justice of the peace, under the provisions of the 12th and 13th sections of the "act for the suppression of intemperance." The justice summoned Hine in proper form to appear before him at his office on the 8th day of July, at nine o'clock in the forenoon, to show cause why the liquor should not be declared forfeit-

ed. At the time specified in the summons for the trial the justice was absent from the state, but on his return, on the 11th day of July, he issued a notice to Hine, which was duly served upon him, that the trial would take place on the 19th day of July at nine o'clock in the forenoon, at his office. On the 19th of July Hine did not appear, and the justice proceeded to hear the complaint, and adjudged the liquors and the vessels which contained them to be forfeited. He thereupon issued an order to the present defendant, directing him to deliver the liquors and vessels to the town agent, according to the provisions of the statute referred to, which was accordingly done. The present suit was brought on the 8th day of July.

The defendant pleaded the above facts in bar, and the plaintiff demurred to the plea. The superior court held the plea insufficient and rendered judgment for the plaintiff. The defendant thereupon filed a motion in error and brought the record before this court.

The statute, (Rev. Stat., tit. 5, § 73,) provides that "whenever any writ, suit, or civil process, shall be made returnable before a justice of the peace, and at the time appointed for the trial the justice shall be absent from the town where the trial is to be had, he may, at any time within twenty days after the said time for trial, proceed to try the cause, provided that he shall give six days previous notice," &c.

An act was passed at the session of the General Assembly in May, 1857, which took effect on the 4th day of July, 1857, which was as follows: "All proceedings and prosecutions brought to obtain the forfeiture of any liquor under the 12th and 13th sections of the 'act for the suppression of intemperance,' shall be held and are hereby declared to be, proceedings *in rem* and not criminal proceedings, and shall be proceeded with as civil and not as criminal proceedings."

*Doolittle,* (with whom was *Platt,*) for the plaintiff in error.

1. The act of 1857 rendered the proceeding then pending a civil one, if it had been a criminal one before. In giving the statute this effect we do not give it a retrospective opera-

tion, but merely a prospective operation on all proceedings whether then pending or thereafter instituted. It does not relate back and make the proceeding a civil one as to the past, but only for the future. In doing so it operates only on the *remedy*, and not on the *fixed rights of the parties.* Statutes of that sort are often passed and have always been sustained as valid. *Ely* v. *Holton,* 15 N. York R., 595. *Hughes* v. *Lumly,* 28 Eng. L. & Eq., 235. *Davidson* v. *Wheeler,* 1 Morris, 238. The language of the statute warrants this construction. It is that *"all proceedings"* for the forfeiture of liquors, *"shall be held to be,"* &c., and *"shall be proceeded with* as civil and not as criminal proceedings."

2. But the proceeding was a civil one independently of the statute. If it was not so, then, as the 15th section provides for the prosecution of the person who has kept the liquors for sale, there would be two criminal prosecutions for the same offense. The act describes the defendant as a " party defendant." He is brought into court, not by arrest, but by a mere citation. No judgment can be rendered against him personally except for costs, for the collection of which an execution issues as in civil process, which may be levied on his property. This feature of the proceeding was taken from the practice in admiralty suits, where a party appearing and claiming the property libeled is required to give bond for costs. The defendant here appears as a mere claimant of the property, not as a party responding to a criminal charge. The defendant is compelled to pay the cost, if he does not make good his claim to the property, even though the property be found to have belonged to, and been kept for sale by, some other person, and be in consequence adjudged forfeited. In such case he clearly does not pay the cost as a criminal. A criminal proceeding *ex vi termini* imports that a crime has been committed, and yet when the warrant is issued in this proceeding no charge is made against any person. It is no objection to our view that the process is a forthwith one; such is the process in bastardy suits, and yet they are held to be civil. *Hinman* v. *Taylor,* 2 Conn., 357.

3. The officer was required by his warrant and by the law,

to hold the liquor in his custody until he had received from the justice one of the written orders specified in the 14th section of the statute. Even if his duty to wait for such an order might cease after a lapse of sufficient time, yet a sufficient time had not elapsed in this case. The plaintiff claims that the proceeding was terminated by the non-attendance of the justice on the 8th day of July. The present suit was brought on that day. The defendant did not know of the termination of the proceeding, if it had terminated, and his right to hold the property in his custody did not cease at the instant. A mere refusal to deliver up the property in the circumstances did not of itself necessarily constitute a conversion. 1 Chitty Pl., 160. Starkie on Ev., 1160. The original seizure having been legal, he is not to be affected by any subsequent error of the justice. *State* v. *Brennan's Liquors*, 25 Conn., 278.

*Wright*, for the defendant in error.

1. The proceeding under which the liquors were seized was originally a criminal and not a civil one. This may perhaps be regarded as implied in the enactment of a law making such proceedings thereafter civil. These proceedings have frequently been held to be criminal by the judges on the circuit. The process by which they are commenced is styled a complaint, and is made before a justice as in other criminal cases. It is a forthwith process. It may be instituted by grandjurors, and where by other persons they are called complainants and prosecutors. The costs are primarily paid from the town treasury,—in the words of the statute, "as in other criminal cases." If the execution for the costs is not paid at once, the defendant may be imprisoned on it. On an appeal by the defendant he gives bond to prosecute his appeal and *abide the order of the court.* The liquors when forfeited are to be sold for the benefit of the town. The 15th section makes it the duty of public officers to institute prosecutions against the parties whose liquors shall have been seized under the act. The act of 1855, which prescribes the oath to be administered to the jury in such cases, speaks of

the issue as between "the state and the defendant." The whole proceeding from beginning to end is essentially criminal in its form, and wholly so in its object.

2. The act of 1857 did not convert the proceeding into a civil one. To give it this effect it must be construed as retrospective. But such a construction will never be given to a statute unless the language of the act clearly requires it. The law always regards such acts with great disfavor, and will, if possible, give them a construction that makes them prospective. There is nothing in the language of this act which requires the construction claimed on the other side. " All proceedings brought" may mean all proceedings *hereafter* brought as well as all proceedings *heretofore* brought, and more naturally has the former meaning. Thus the term in the statute of 1850, " all real estate *conveyed* to a married woman" has been held to mean all real estate *thereafter* conveyed. *Plumb* v. *Sawyer*, 21 Conn., 351. Even where a statute is in express terms retrospective, courts will give it as strict a construction as possible, for the purpose of limiting its effect to the precise object clearly intended by the legislature. *Goshen* v. *Stonington*, 4 Conn., 220. *Perkins* v. *Perkins*, 7 id., 558. *Thames Manufacturing Co.* v. *Lathrop*, id., 550, 557. *Whitmore* v. *Hapgood*, 10 Mass., 437. *Somerset* v. *Dighton*, 12 id., 383. *Dash* v. *Van Kleek*, 7 Johns., 477.

3. If the proceeding was a criminal one, on the 8th day of July, then it was terminated by the non-attendance of the justice on that day, there being no provision for the revival of criminal proceedings in such a case. And on the termination of the proceedings it became the duty of the defendant instantly, on demand being made, to deliver up the property. The plaintiff's right to the possession of it instantly revived and he could at once demand it, and on a refusal to deliver it could sue for it.

WALDO, J. There is great doubt whether the parties have, in their pleadings, presented the questions they have asked us to revise in a proper form, and we might perhaps be justified in refusing an examination of them on account of this

informality, but as they have both reated the special plea as a correct statement of the facts, and have asked our opinion upon them, we shall treat the subject as if it were presented in a strictly technical manner.

The plaintiff in error claims that the process pending before justice Foster on the 8th day of July, 1857, was civil process, and that therefore, as the justice was absent from Meriden on that day, it was competent for him, at any time within twenty days thereafter, to proceed to hear and try the case, on giving notice to the parties of the time and place of trial, in the same manner as he might have done in any civil suit; and that, inasmuch as said notice was given and a legal trial had before said justice Foster on the 19th day of said July, and the liquor and vessels in question properly disposed of by the adjudication and order of said justice, the defendant in error can have no cause of complaint. The defendant in error insists that the proceedings before justice Foster on the 8th day of July, 1857, were criminal proceedings, and inasmuch as said justice Foster was not in the town of Meriden on that day, the proceedings then came to an end, and he was entitled to the property that had been seized by the officer on said proceedings. Both parties thus place their right to recover, not upon any informality in the pleadings, but upon the legal character of the proceedings before justice Foster on the 8th day of July, 1857.

There can be no doubt that differences of opinion have existed in relation to the character of the proceedings under the 12th and 13th sections of the act for the suppression of intemperance, passed in 1854. It is said that some of the judges upon the circuit have regarded these proceedings as civil, and have permitted the parties to testify, and the counsel for the prosecution to close the argument, while others have treated them as strictly criminal in all respects. It is possible that this difference of opinion led to the passage of the act of 1857, in these words : " All proceedings and prosecutions brought to obtain the forfeiture of any liquor under the 12th and 13th sections of the act for the suppression of

intemperance shall be held, and are hereby declared to be proceedings *in rem*, and not criminal proceedings, and shall be proceeded with as civil and not as criminal proceedings." Acts of 1857, page 44. But whatever may have led to the passage of this act, it is apparent from the language used that the legislature intended that there should no longer remain any doubt that the proceedings under the 12th and 13th sections of the act for the suppression of intemperance, are to be treated as civil and not as criminal proceedings. The defendant in error, admitting the general correctness of this position, insists that the proceedings in question were, at the time they were commenced, criminal proceedings; and that they can not be affected by any act of the legislature subsequently passed; and that any construction of the statute above recited that would make it change the character of these proceedings, would make the statute retroactive in its operation,—a construction which courts will always studiously avoid. Were it necessary for us to express an opinion as to the character of these proceedings in their inception, we might not, upon this point, differ with the court below; but we are of opinion that the act of 1857 made these, as well as all other proceedings under the 12th and 13th sections of the act of 1854, strictly civil in their character. In coming to this result we do not intend to give, and we think we do not give, this act a retroactive operation by construction. This act went into operation on the 4th day of July, 1857. The proceedings in question were then pending. Up to that time they had been proceeded with as criminal proceedings. The act that became a law on that day provides that such proceedings shall be civil and not criminal. It merely changes the course of procedure from that time. It does not change any previous act, or profess to heal any error. It takes up the proceedings as they were, and changing the remedy, mitigates the severity of the practice under the previous law. In this aspect this statute is entirely prospective in its operation, affecting only proceedings thereafter to be had, and does not affect proceedings already had.

The language of the statute justifies the views we have

taken of its meaning. The words are "all proceedings and prosecutions *brought* to obtain the forfeiture," &c. The word "*brought*" implies past time, and includes prosecutions then pending as well as those thereafter to be brought. These proceedings "are to be held and are *declared to be* proceedings *in rem*." This language is very appropriate if used in relation to proceedings then in being, but is inappropriate if applied solely to proceedings thereafter to be had. If the legislature intended to include only prosecutions thereafter to be brought, we think it would have used different language, expressive of such intention. But the language of the statute is sufficiently comprehensive to include not only prosecutions to be brought but also prosecutions then pending, and is evincive of the intention of the legislature to make this act operative upon proceedings pending at the time it was passed.

We have seen that this statute operates only upon the remedy. Statutes of this character have always been understood to apply to cases pending at the time they were passed. The law of 1855 abolishing the county court, and transferring the cases pending in those courts to the superior court, and thereby subjecting the parties, in some instances, to increased fees and expenses, has never been regarded as retroactive. So the law excusing a party from paying a duty on a continuance in the superior court after the first term, and the law limiting the length of the arguments of counsel, and other like laws, have all been held to operate upon suits pending when these laws were passed. In England it has been held that acts of parliament relating to procedure, as that for rendering interested witnesses admissible, and that which imposed on executors a liability to costs, applied to cases pending at the time the acts respectively passed. In *Boodle* v. *Davis*, 22 Law Jour. *N. S.* 69, (*S. C.* 16 Eng. L. & Eq. Rep. 521,) owing to the first common law procedure act, execution was allowed to issue on a judgment without its being revived in a case in which a *scire facias* was necessary until that act was passed. (Cited in the case of *Hughes* v. *Lumley*, 28 Eng. L. & Eq. R., 233.)

But it is said that the case of *Perkins* v. *Perkins*, 7 Conn., 558, contravenes the views we have taken of this case. That was an action of debt brought to recover a penalty incurred by a breach of a certain by-law of the city of Norwich. The writ was dated May 27, and served May 28, 1828, and was returnable to the city court of the city of Norwich on the second Monday of June, 1828. A trial was had in August, 1828, and judgment was rendered for the plaintiff. On motion of the defendant the court caused a record to be made that the title to land was in question on the trial, and thereupon the defendant appealed the case to the superior court. In the superior court a question was made whether the action was appealable. *During the pendency of this suit and before its trial in August, 1828,* the legislature passed an act providing "that whenever any action shall be brought to recover a penalty for the erection of any nuisance upon any public highway, &c., and the defendant shall justify himself by reason of his title to the land," &c., "an appeal shall be allowed," &c. The plaintiff insisted that this act could not affect a suit commenced before and pending at the time the act was passed. The court held that the act in question did not affect cases pending at the time it was passed; but their decision is placed upon the peculiar phraseology of the act. Hosmer, C. J., in giving the opinion of the court, says; "The act alluded to, on the fairest principles of construction, authorizes appeals in cases *posterior* to the time of its legal commencement and in no other. The expression of it is future and prospective. 'Whenever an action *shall be brought* to recover a penalty' is its phraseology. Had the legislature intended it, it were easy and natural for them to have said, *in all actions for penalties* appeals shall be allowed, &c." It is apparent that the court regarded this act as having no effect on actions pending at the time it was passed because its language in terms included only actions thereafter to be brought. The language of the act of 1857 is different in its terms, and, as we have seen, includes prosecutions pending at the time it took effect as well as those thereafter to be brought. There is no conflict between these cases, the gov-

erning principle in both being the same, viz. the intention of the legislature ascertained from the language used.

Upon the facts admitted we are of opinion that the plaintiff in error is entitled to judgment in his favor, and that the superior court erred in rendering judgment against him. The judgment of the superior court is therefore reversed.

In this opinion the other judges concurred.

Judgment reversed.