JAMES O'BRIEN ET AL. vs. HENRY I. FLINT.

Third Judicial District, New Haven, January Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A testamentary power of sale does not authorize a mortgage, unless there be something in the will to show that a mortgage was within the intention of the testator.

A testator gave all his property, real and personal, to his wife for her life, with remainder to his son, and provided that "if it should be necessary for the support of my wife and son to sell a portion of the land, I hereby give my wife full power to sell and convey as she may judge best." *Held* that this did not authorize the wife to execute a mortgage to raise funds for the support of herself and son. It did authorize a sale, after the death of the son, to raise funds for her support, and a sale of the whole.

A power must be exercised in strict accordance with its terms; but it is not indispensable that the instrument whereby it is exercised should refer to the power, when, if not an exercise of that, it would be wholly inoperative.

After the widow had given mortgages amounting to $2,500 on land of the estate which was inventoried at $2,900, she executed a quit-claim of the land, the consideration of which was $100 then received in cash, and the payment by the grantee of the previous mortgages. *Held* that this deed was not a lawful exercise of the power with which the widow was intrusted, since it was not given to procure support, except as to the $100, but to reimburse the makers of prior loans who had accepted another form of security.

Whether the grantee in this deed would have a valid claim in equity to charge the land with the repayment of the $100, *quære.*

General Statutes, § 1055, provided that if the defendant in any action to recover possession of real estate had made improvements in good faith, believing that he had good title to the land, final judgment should not be rendered until the sum equitably due the defendant should be ascertained by the court and paid by the plaintiff. Chapter 141 of the Public Acts of 1901 amended this statute by substituting a stay of execution for the postponement of judgment, and by authorizing the plaintiff to pay the amount found due the defendant for betterments into court for defendant's benefit, instead of to him. This Act was to take effect from its passage, and to apply to pending suits. *Held* that these alterations of the law were reasonable modifications of the form of remedy, and applied to this action which was pending when the statute took effect.

When the Act of 1901 was passed, the court had announced its finding of the issues for the plaintiff, and that betterments should be allowed to the defendant, and had ascertained the amount of the betterments. The plaintiff had not paid the sum awarded, and the rendition of judgment was postponed by the terms of the existing law. *Held* that by the Act of 1901 the plaintiff immediately became entitled to judgment, though with a stay of execution, and that the Act was not unconstitutional as taking defendant's property without due process of law, nor in denying to him the equal protection of the law.

Whether a betterment statute is constitutional, *quære.*

A defendant, to whom betterments have been awarded by virtue of such a statute, cannot assert its unconstitutionality as a reason for granting him a new trial.

Under a statute giving a party in a certain class of actions an election as to the form of judgment, to be made by filing a notice "upon the rendition of the verdict," if the action is tried to the court, an announcement of the decision may be deemed equivalent to the rendition of the verdict, as fixing the date for filing the notice.

Argued January 21st—decided March 5th, 1902.

ACTION to recover the possession of certain real estate and the rents and profits thereof, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.;* facts found and judgment rendered for the plaintiffs, and appeal by the defendant for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Robert E. DeForest* and *George P. Carroll*, for the appellant (defendant).

*Daniel Davenport* and *Elmore S. Banks*, for the appellees (plaintiffs).

BALDWIN, J. The defendant claims title to the demanded premises under the widow of James Fox. By the will of the latter he gave her all his property, real and personal, during her life, with remainder to his son, adding: "If it should be necessary for the support of my wife and son to sell a portion of the land, I hereby give my wife, Catherine, full power to sell and convey as she may judge best." She sold several parcels of the real estate, some of the conveyances purporting to be in execution of the power and others being simple warranty deeds. The son having died, she then mortgaged the demanded premises, being the residue of the real estate, by several successive conveyances for different sums to different parties. None of these mortgage deeds referred to the power. The last mortgage was foreclosed, and after the foreclosure title became absolute against her it was transferred to one Godfrey. She then executed a quitclaim deed of the demanded premises to him and Jennings, one of the prior mortgagees, the deed reciting that it was given in consideration of $100 and of "the money which has been advanced to me from time to time heretofore by said Jennings and said Godfrey, or other grantors, and the purchase by them, at my request, of other claims incurred by me, all of which advancements and all this present consideration were and are necessary for my support and maintenance and the

support and maintenance of my son James, during his lifetime, and were by me used for that purpose." The defendant was in possession under a warranty deed from Godfrey and Jennings.

The plaintiffs were the heirs of the deceased son, and brought the suit after the death of the widow.

On the trial the defendant offered parol evidence to show that all the mortgages were given to secure advances made and supplies furnished to the widow, which were necessary for her support. This evidence was properly excluded.

A testamentary power of sale does not authorize a mortgage, unless there be something in the will to show that a mortgage was within the intention of the testator. *Hoyt* v. *Jaques*, 129 Mass. 286, 288. The rule that the greater includes the less may justify such a construction of a charter as to make a grant of power to sell, embrace a power to mortgage. *Willamette Mfg. Co.* v. *Bank of British Columbia*, 119 U. S. 191, 198. The same principle may be applied to an enabling Act in favor of a married woman. *Stafford Savings Bank* v. *Underwood*, 54 Conn. 2. In such a case the conveyance is made by the owner of the estate, and the loss, if any should occur, is his alone. But the donee of a testamentary power acts for the dead and upon what belongs to another. A sale of property presumably brings its full value. A mortgage presumably brings but a part of its value, and yet may result, by foreclosure, in the loss of the rest. The power given in the will before us is expressly conditioned on the necessity of a sale, and no right to make any other form of transfer is fairly implied. The evidence offered to sustain the mortgages was therefore immaterial. No evidence could make them good as against the remaindermen.

Parol evidence was also offered and rejected to prove that the quitclaim deed was given to Jennings and Godfrey for $100, which was necessary for the support of the widow, and to make them good for the several sums previously borrowed on mortgages ; which sums they had paid in full to the various mortgagees, receiving in return assignments of their interests and title.

She had in her own right a life interest in all the lands, which her mortgages had effectually transferred. They purported, however, to do more. Having full covenants of title and warranty, they might have been a sufficient execution of a power to mortgage the fee, had it been given by the testator; for while they did not refer to the power which he created, they do refer to that which was the subject of it, namely the estate in fee. *Hollister* v. *Shaw*, 46 Conn. 248, 252; *Hamilton* v. *Crosby*, 32 id. 342, 343, 347, note; *Warner* v. *Connecticut Mutual Life Ins. Co.*, 109 U. S. 357. But, be this as it may, mortgages having been in fact unwarranted by the power, the lands, at the date of the quitclaim deed, were owned by the plaintiffs in fee, subject to an estate for her life in the releasees, and to a power to sell the fee, which she could exercise if it should be necessary for her support. The death of her son had narrowed this power, but not destroyed it. The testator's object manifestly was to enable her to provide for the wants of both so long as the son lived, and of herself should she survive her son.

Nor was she only empowered to make a single sale and convey part of the lands. If it became necessary to sell a portion, in order to provide for her support, she might afterwards sell other portions for the same purpose, and the language of the will is such as to justify a sale of all, if that were judged by her to be the best way of raising the sum required. In such case, a trust in favor of the remaindermen, as to the balance of the purchase price above that sum, might have arisen; but this would not invalidate the conveyance.

The quitclaim deed was wholly inoperative if it did not convey a title to the remainder in fee. The fact, therefore, that it does not refer to the will, nor declare in terms that it is made in execution of a power, would not deprive it of effect, if the transaction which it consummated was such as to amount to a lawful exercise of the power with which the widow was entrusted. 1 Sugden on Powers, * 417.

But the evidence offered, while it would have tended to establish an attempt to exercise the testamentary power, would

also have shown that the attempt was ineffectual. The trans-
action could not be treated as a sale to raise funds necessary
for her support. On the contrary, the main consideration
claimed was the mortgage loans made in previous years.
These loans amounted in all to over $2,500, exclusive of inter-
est; and the inventory value of all the testator's real estate,
including what she had previously sold, was but $2,890. The
additional sum paid to her when she gave the release deed
was only $100.

A power must be exercised in strict accordance with its
terms. In *Bouton* v. *Doty*, 69 Conn. 531, 543, we held that
one reserved by deed to raise money by mortgage for the
grantor's own personal benefit, at any time he might desire,
would warrant a mortgage in part for past advances. The
power now in question is less ample, and cannot fairly-justify
a conveyance of the entire real estate of the testator, for a
consideration of $100 paid over at the time and over $2,500
paid over in previous years, for the reimbursement of which
another form of security had been accepted. His object was
to provide for his widow's support. This quitclaim deed, if
valid, stripped her of all the means remaining for that pur-
pose. To give it may have evinced a desire on her part to
satisfy a meritorious claim, but it was not in furtherance of
her husband's intention to secure her comfortable support.

The parol evidence now in question was therefore properly
excluded, for it could have been of no avail to the defend-
ant.

For the same reason, the recitals in the deed itself cannot
avail against the plaintiffs' demand of possession.

There is no occasion to inquire whether the defendant has
any equity to charge the land with the $100 paid at the time
of the conveyance. This would be a matter of equitable cog-
nizance only, and no claim for any such relief was made in
the Court of Common Pleas. *Lockwood* v. *Sturdevant*, 6
Conn. 373, 387.

It is found that the defendant purchased the property in
1891, in good faith, believing that his title was absolute, and
had made improvements thereon before suit brought, to the

value of $1,750. In 1891 a betterment statute existed (General Statutes, § 1055), providing that "final judgment shall not be rendered in any action to recover the possession of land, against any defendant who or whose grantors or ancestors have, in good faith, believing that he or they, as the case may be, had an absolute title to the land in question, made improvements thereon, before the commencement of the action, until the court shall have ascertained the present value thereof and the amount reasonably due to the plaintiff from the defendant for the use and occupation of the premises; and if such value of such improvements exceeds such amount due for use and occupation, final judgment shall not be rendered until the plaintiff has paid said balance to the defendant; but if the plaintiff shall elect to have the title confirmed in the defendant, and shall upon the rendition of the verdict file notice of such election with the clerk of the court, the court shall ascertain what sum ought in equity to be paid to the plaintiff by the defendant, or other parties in interest, and on payment thereof may confirm the title to said land in the parties paying it." In 1901, pending the present action, this was so amended (Public Acts of 1901, p. 1301) as to substitute for the words "final judgment shall not be rendered until the plaintiff has paid said balance to the defendant," a provision that "execution shall not be issued until the plaintiff has paid said balance to the defendant or into court for his benefit," and it was declared that the amendatory Act "shall apply to actions now pending," and take effect from its passage, the date of which was June 14th.

This cause was heard in the Court of Common Pleas prior to May 7th, 1901, and a decision had been announced in favor of the plaintiffs; the court stating at the time, that it found that the defendant had made improvements under such circumstances as to bring him within the terms of General Statutes, § 1055; that the exact amount of the difference found between their value and that of the use and occupation of the premises would be announced later; and that final judgment could not be rendered until the plaintiffs should make the election for which the statute provided. On May 7th

this amount was found and announced. In October, no election having been made by the plaintiffs, they obtained judgment for possession, the judgment file providing "that execution shall issue therefor, whenever the plaintiffs shall have paid the defendant, or into court for his benefit, the excess of the value of said improvements over the said amount due for use and occupation, to wit, the sum of $1,674.53."

The only effect of the Act of 1901 upon pending suits was to substitute for a postponement of judgment a stay of execution, and to give a payment into court for the defendant's benefit the same effect as a payment made to and accepted by him. These were nothing more than reasonable modifications of a form of remedy for enforcing rights. *Hine* v. *Belden*, 27 Conn. 384, 391 ; *Mechanics' & Farmers' Bank's Appeal*, 31 Conn. 63, 70. The issues having been closed to the court, the decision announced prior to May 7th must be considered as equivalent to a verdict for the plaintiffs, within the meaning of the statute. Upon May 7th they became entitled to a final judgment as soon as they had paid to the defendant the balance then determined to be his due. They never made an election to have the title confirmed in him. In this state of things, the Act of 1901 came into operation. It gave them a right to judgment before making payment to the defendant, but only with stay of execution until payment should be made. Practically therefore their position was unchanged. The time of payment was, indeed, deferred, but meanwhile the possession of the demanded premises remained in the defendant. The judgment, so long as they could not enforce it, did him no substantial harm. The provision for a payment into court simply relieved the plaintiffs from the consequences which might possibly have followed from a tender of the money due, met by a refusal to accept it.

No question has been raised as to the constitutionality of betterment statutes, and the defendant certainly cannot complain of what is designed to establish or confirm an equity in his favor.

The Fourteenth Amendment of the Constitution of the United States secured to him the equal protection of the

laws; but he has had it. He has been treated like any other party to a pending action of this character. Nor has his property been taken, by reason of the Act of 1901, without due process of law. This action was such process, and the slight changes in the mode of carrying it through its final stage did not deprive it of that character.

There is no error.

In this opinion the other judges concurred.