[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I
This is an action for strict foreclosure claiming a default in payment of $44,733.33 on a mortgage debt due July 22, 1992 at the rate of 24% interest per annum plus late charges and attorneys' fees. Plaintiff alleges it is owner and holder of mortgage note described in complaint. Plaintiff alleges it assigned the mortgage note and debt to Aglino Masotta and on September 14, 1993, he assigned it back to plaintiff, the assignment being recorded September 27, 1993 in the Bridgeport land records. Plaintiff claims foreclosure, immediate possession, damages, a receiver of rents, attorneys' fees and costs, and interest from date of default.
In a Second Amended pleading by defendant Spencer setting forth Special Defenses and Counterclaim dated October 12, 1993, the defendant filed the following pleadings hereafter summarized:
1st Special Defense. The mortgage debt of July 17, 1991, on which plaintiff's claim is based, was part of a scheme to defraud defendant and to induce defendant to borrow money with no reasonable expectation of her ability to repay, and also to charge unconscionable interest and transaction costs, all to the end of defrauding defendant of her equity in her house. CT Page 482
2nd Special Defense. The mortgage note and deed are null and void because plaintiff failed to give consideration for it by its failure to release the mortgage note and deed dated July 16, 1990.
3rd Special Defense. The mortgage note and deed are void because the prepaid finance charges were in excess of those allowed under General Statutes Section 36-224l.
4th Special Defense. On June 4, 1993 within the three-year Statute of Limitations the defendant Spencer rescinded the loan transaction of July 16, 1990, and July 17, 1991 because material breaches of the Truth in Lending Act occurred as follows:
 1) Plaintiff's failure to disclose monies allocated for future assignment recording fees as a prepaid financial charge in the July 1991 transaction which violated 15 U.S.C. § 1605(a).
 2) Same failure as above on the July 1990 transaction.
 3) Plaintiff's failure to include unearned portion of prior financial charge (those monies allocated for future assignment recording fees as a prepaid financial charge in July 1990 transaction) as part of financial charge in the July 1991 transaction in violation of 15 U.S.C. § 1605(a).
 4) Plaintiff's failure to show these amounts as a prepaid financial charge in the July 1991 transaction led to:
 a) underdisclosure of overall financial charge in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d)
 b) underdisclosure of annual percentage rate in violation of Section 1638(a)(4) and 12 C.F.R. § 226.18(e)
 c) overstatement of amount financed in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b) CT Page 483
 As more then twenty days have passed since defendant Spencer cancelled this transaction, plaintiff has lost its security interest.
 5th Special Defense. Plaintiff Family Financial Services, Inc. fraudulently concealed from defendant Spencer that it was actually acting as a "broker" and not a maker of the loan, both in the July 1990 and July 1991 transactions, and circumvented the licensing requirements of the Secondary Mortgage Act by acting as a "front" for Aglino Masotta and/or Edward Masotta, in both transactions, thus rendering both transactions void.
6th Special Defense. The assignments back and forth between plaintiff and both Masottas were made to defraud defendant Spencer of ownership of her residence, and were made to avoid liability to defendant Spencer, and thus render the note and mortgage at issue here void.
In effect plaintiff Family Financial Services, Inc. denies the allegations of defendant Spencer's Special Defenses.
On November 18, 1993, upon motion of the defendant Spencer, the court ordered Aglino Masotta and Edward Masotta to be cited into this case as parties defendant in the Counterclaim filed by defendant Spencer set forth in her Second Amended Counterclaim dated October 12, 1993. This Counterclaim contains the following counts:
First Count. (Violations of Secondary Mortgage Act):
 At all relevant times, Family Financial Services, Inc., a defendant in this Counterclaim, was a second mortgage lender under General Statutes Section 36-224b.
 Both defendants Masotta are the beneficial owners of the secondary mortgage transactions ostensibly made between defendant Family Financial Services, Inc. and the defendant Spencer.
 On July 17, 1991, defendant Spencer entered into a secondary mortgage with defendant Family Financial Services, Inc. that the latter represented to be $44,000 in principal and it attempted to secure the loan with a mortgage on defendant Spencer's property at 221-223 CT Page 484 Mountain Grove Street, Bridgeport.
 This mortgage transaction was represented by defendant Family Financial Services, Inc. as including a refinancing of a mortgage dated July 16, 1990, a secondary mortgage loan for $30,000 that defendant Family Financial Services, Inc. also represented it had made with defendant Spencer and had attempted to secure it with a mortgage on the same Bridgeport property.
 Defendant Spencer entered into said transaction with defendant Family Financial Services, Inc., and both Masottas, for personal, family, and household purposes.
 A "lender" under the Secondary Mortgage Act is defined in General Statutes Section 36-224a(e).
 Despite the fact that both mortgage transactions described above were held in the name of defendant Family Financial Services, Inc., the latter did not "make" either secondary mortgage loan.
 A "broker" under General Statutes Section 36-224a(f) is defined as "any person, who for a fee or other considerations, negotiates, solicits, places or finds a secondary mortgage loan which is to be made by a lender."
 In both of the above mortgage transactions, defendant Family Financial Services, Inc. acted as a "broker" in violation of General Statutes Section 36-224a(f) which provides that lenders and brokers must be mutually exclusive persons in secondary mortgage transactions.
 Defendant Family Financial Services, Inc. fraudulently concealed from defendant Spencer it was a broker in both mortgage transactions, leading her to believe it was the maker and lender of both transactions.
 The defendants Masotta were the lenders in both transactions and they were not licensed second mortgage lenders or brokers under General Statutes Sections 36-224b and 36-224d(b)(4).
 Both defendant Masottas violated the Secondary Mortgage Loan Act by entering into secondary mortgage CT Page 485 transactions without a license.
 Defendant Family Financial Services, Inc., and both defendants Masotta circumvented the licensing representments of the Secondary Mortgage Act in that defendant Family Financial Services, Inc. acted as a "front" for both defendants Masotta in both mortgage transactions.
 They also violated General Statutes Section 36-224l by charging loan fees, points, commissions, transaction fees or similar prepaid finance charges exceeding 10% of the principal amount of the loan.
 A prepaid finance charge of $3000 ("10 points") was improperly included in computing the principal sum of $30,000 in the July 1990 transaction, the proper principal amount being $27,000. This resulted in prepaid finance charges of $300 more than allowed by General Statutes Section 36-224l, this excess charge being made by defendant Family Financial Services, Inc., and/or both defendants Masotta.
 The latter defendants also made a prepaid finance charge of $4400 ("10 points") which was included in computing the principal of $44,000 in the July, 1991, transaction, the proper amount of that loan being $39,600. Thus the latter defendants charged $440 more in prepaid finance charges than allowable under General Statutes Section 36-224l.
 The monies allocated for future assignment recording fees in both the July 1990 and 1991 transactions and those monies allocated for appraisal costs which appraisals were never conducted also constituted prepaid finance charges in violation of General Statutes Section 36-224l.
 These violations were repeated, intentional and wilful entitling defendant Spencer to punitive damages.
 As a result of said violations, defendant Spencer suffered damages allowed under the Secondary Mortgage Act, including the voiding of the mortgage note.
 Second Count. (Violation of Usury Statutes) CT Page 486
 The first six paragraphs of the First Count are repeated and incorporated as paragraphs 1 through 6.
 Defendant Family Financial Services, Inc. failed to release the mortgage and loan of July, 1990, until June, 1993, after institution of this foreclosure action.
 Defendant Family Financial Services, Inc., and defendants Masotta fraudulently concealed from defendant Spencer that the July 1991 mortgage note and deed was not a bona fide mortgage of real property for the reason that:
 (a) Defendant Family Financial Services, Inc. paid no consideration for either the July 1990 or July 1991 transactions because they served only as a secondary mortgage broker in violation of General Statutes Section 36-224a(f).
 (b) Defendant Family Financial Services, Inc. deceived defendant Spencer by being not a lender but a broker.
 (c) Said transactions violated General Statutes Section 36-224l by exceeding 10% statutory cap.
 (d) (e) Said transactions included interest exceeding 12% per annum in violation of Section 37-4 and were made for more money than was actually received in violation of General Statutes Section 37-5 and/or
 (f) Defendant Family Financial Services, Inc. and/or the defendants Masotta took more charges than legally permissible.
 (g) On information and belief, defendants Masotta deceived defendant Spencer by failing to reveal they were real parties in interest.
 The mortgage loan is usurious and violates General Statutes Sections 37-3 and 37-9.
 Said violations damages defendant Spencer, being intentional and wilful, and entitling her to punitive CT Page 487 damages, and defendant Spencer claims remedies allowed under the usury statutes.
 Third Count. (Violation of Truth in Lending Act)
 This action seeks damages and rescission resulting from failure of defendant Family Financial Services, Inc., and the defendants Masotta to make required disclosures in closed and credit transactions under Consumer Protection Act 15 U.S.C. § 1601 et seq. (Truth in Lending Act).
 Defendants Masotta failed to disclose their actual roles as creditors in the second mortgage closed end transactions nominally made by defendant Family Financial Services, Inc. to defendant Spencer in July 1990 and July 1991.
 In the July 1991 transaction the named defendants (excluding defendant Spencer) failed to disclose as part of the finance charge fees for recording the future assignment of the mortgage which were unrelated to the mortgage made to defendant Spencer but would have related to a future transaction among the other named defendants. These monies allocated to future assignment recording fees as a prepaid finance charge in the July 191 [1991] transaction violated 15 U.S.C. § 1605(a). The same is true of the July 1990 transaction charges and fees.
 Defendant Family Financial Services, Inc. and defendants Masotta never assigned the July 1990 second mortgage signed by defendant Spencer and the recording fees charged was a finance charge and an unearned portion of the July 1990 charges which should have been included by the defendants (other than defendant Spencer) as part of the finance charge in the July 1991 transaction and their failure to pay out monies from both the 1990 and 1991 transactions earmarked as appraisal fees which were not in fact made, resulted in:
 (a) underdisclosure of the overall finance charge in violation of 15 U.S.C. § 1638(a)(3) and 12 C.F.R. § 226.18(d);
 (b) underdisclosure of the annual percentage rate in violation of 15 U.S.C. § CT Page 488 1638(a)(4) and 12 C.F.R. § 226.18(d);
 (c) overstatement of the amount financed in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b).
 Fourth Count (Violation of Connecticut Unfair Trade Practices Act)
 Allegations of First Count paragraphs 1 through 22 are made paragraphs 1 through 22 of the Fourth Count.
 Allegations of Second Count paragraphs 7 through 12 are made paragraphs 23 through 28 of the Fourth Count, and paragraphs 29 through 40 of the Third Count are made paragraphs 24 through 40 of the Fourth Count.
 For the above reasons all defendants (except defendant Spencer) have acted in violation of General Statutes Section 42-110a et seq. in that their actions were unfair and deceptive in the conduct of trade or business; they violated public policy set forth in General Statutes Section 36-224a(e) and (f), 36-224b and 36-224l; and General Statutes Sections 37-3, 37-4, 37-5, 37-9 and 15 U.S.C. § 1601 et seq.; their actions were immoral, unethical, oppressive and unscrupulous; and said actions resulted in ascertainable loss and injury to defendant Spencer, in violation of the Connecticut Unfair Trade Practice Statute.
Defendant Spencer claims:
 1. Rescission of mortgage of July 1991 and voiding of the mortgage note
2. Money damages
3. Punitive and exemplary damages
4. Costs and attorneys fees
 5. Such other relief as the court may deem just and equitable. CT Page 489
 The defendant Family Financial Services, Inc. and both defendant Masottas in effect deny those allegations of defendant Spencer's Counterclaim which are in dispute.
 II
This action was instituted by Attorney Andrew Amendola on November 9, 1992. On March 4, 1993, Attorney William Cashman entered his appearance for the plaintiff in lieu of Amendola, Attorney Barry Sigal entered his appearance for defendant Spencer on December 22, 1992, and Attorney Welch-Rubin filed her appearance for defendant Spencer in addition to Sigal on May 14, 1993 and acted as trial counsel for Spencer.
On August 12, 1993, the case was assigned for trial. Prior to trial the court briefly discussed some preliminary "housekeeping" matters with counsel in chambers. Defendant's counsel indicated she had just discovered the names of one or more individuals who should be cited in as parties and she requested a continuance. Plaintiff's counsel requested that a short hearing be held on the limited question whether the named plaintiff was the owner and holder of the mortgage note and deed presented for foreclosure, and he requested a short hearing on that question, and that he was prepared to offer evidence on that issue and would like to be heard. Defendant's counsel did not object and a hearing was held. On August 26, 1993, the court filed a "Preliminary Memorandum of Decision" (See Footnote 1) which is hereby incorporated as part of this Memorandum, omitting only the last paragraph.
On August 12, 1993, the defendant filed a motion to dismiss the complaint because plaintiff had no standing as it was not the "owner and holder of the note and mortgage" as it alleged.
After this preliminary hearing on August 12, 1993, plaintiff amended its complaint to assert that plaintiff had assigned the mortgage note and deed to Aglino Masotta and that on September 14, 1993, the latter had assigned it back to plaintiff which assignment was filed on the land records.
When trial resumed on March 29, 1994, defendant challenged the purported assignment of September 14, 1993, as invalid because Andrew Forte, plaintiff's vice president, had forged the signatures of Aglino and Edward Masotta on that assignment. CT Page 490 Forte purportedly had a power of attorney in fact to sign real estate documents but he neither signed nor acknowledged said assignment, and furthermore he did not place the power of attorney on the land records together with the assignment of September 14, 1993, as required by General Statutes Section 47-10.
In response to this claim of the defendant, the plaintiff at the lunch break on March 29, 1994, filed on the land records an assignment dated March 16, 1994, from the Masottas to the plaintiff.
It should be further noted that the assignment of September 14, 1993, (plaintiff's Exhibit H) purportedly signed by the Masottas discloses an acknowledgment by a notary public, Josh P. Levy, certifying that both Masottas appeared personally before him and acknowledged the assignment was their free act and deed when in fact neither one of the Masottas appeared before him to be sworn. Josh Levy was an employee of the plaintiff.
It is also significant that, as found by the court in its Preliminary Memorandum of Decision on defendant's motion to dismiss, that Attorney Ginsberg, representing the plaintiff, was produced as a witness who was present at the mortgage closing in July 1991 and who stated in response to questions of plaintiff's counsel that the $44,000 involved in the transaction came from Aglino Masotta and none of it came from plaintiff. The court is convinced that in this transaction the plaintiff was not the "lender" and it was in fact "fronting" for the Masottas who were the actual lenders. It is of no moment that the defendant's motion speaks of lack of subject matter jurisdiction and also lack of standing. The court certainly has subject matter jurisdiction in foreclosure matters, but where a plaintiff seeks a foreclosure without having standing as the owner and holder of the mortgage debt, it cannot prevail and its claim as a plaintiff must therefore be denied but leaving Family Financial Services, Inc. in this case, as a defendant on the cross-complaint of the defendant Spencer.
The responses to interrogatories 5 and 6 put to Forte on July 7, 1993 were answered by him in the negative (defendant Spencer's Exhibit 2) when he was asked if plaintiff had ever sold or assigned either the July 1990 or July 1991 mortgage to anyone. This obviously throws a considerable cloud over Forte's credibility with reference to the purported assignments by the Masottas. CT Page 491
Both Masottas are the real parties in interest, acting under the aegis of Family Financial Services, Inc. Because of their relationship in connection with these mortgages, they and Family Financial Services, Inc. are subject to the same responsibilities under the law.
It should be noted that Exhibit H, the purported assignment by the Masottas to Family Financial Services, Inc. datedSeptember 14, 1993, was not signed by the Masottas and sworn to before Josh Levy, notary public, but was actually signed by Andrew Forte of Family Financial Services, Inc., who forged the signatures of the Masottas, claiming he had a power of attorney for the Masottas and could do so. Attached to Exhibit H is a complete and full power of attorney in real estate matters signed by the Masottas appointing Forte dated January 3, 1990, but this power was not recorded with the assignment of September 14, 1993 (although it is now stapled to it). The town clerk stamped only the assignment itself. Forte did not sign it or acknowledge it as the attorney in fact for the Masottas as required under Section 47-10, nor was the power of attorney previously recorded and no reference to it was made on the assignment of September 14, 1993. On March 29, 1994, during the trial, plaintiff filed without the court's permission another assignment dated March 16, 1994, that the Masottas did in fact sign personally.
All of this business with the assignments and the apparent complete empowerment of Forte, vice president of Family Financial Services, Inc. to act for the Masottas starting in January, 1990, tends to lend further credence to the actual interest of the Masottas in providing the money for both the 1990 and 1991 mortgages.
 III
The defendant Spencer claims the mortgage transactions were unconscionable because plaintiff and the Masottas knew or should have known there was no reasonable expectation that defendant Spencer could repay the debt due to its amount, the interest charged, and the transaction costs.
Defendant Spencer had some literacy difficulties, her knowledge of English was quite limited, she lacked business acumen, she was not represented by counsel at the closing, her CT Page 492 income, assets, and debts made it difficult to expect reasonably that she would be able to repay the second mortgage. Spencer was an uneducated Jamaican woman who did not read well. Attorney Kenneth Ginsberg, representing the plaintiff, failed to read or explain the documents to her, simply rushing her to sign all documents placed in front of her. While she signed a waiver of legal representation given to her by Ginsberg, she paid $500 and $400 respectively (two mortgage transactions) in his fees for representing plaintiff, it would not be unreasonable to expect that he would make some effort to explain to Spencer what a "waiver" was and what the other papers contained. Those fees were financed in each transaction as part of the mortgage debt. In addition, the requirement that she pay a full year's interest in advance on the July 1990 mortgage increased the annual APR above 31.81% disclosed to her at the first meeting. On the July 1991 mortgage she again was required to pay a full year's interest in advance but at least this sum was held in escrow by Attorney Cretella, who while not representing her, obtained its placement in an escrow account. It appears that she was not told until the last moment in both mortgage transactions that a condition of credit required her to put up one year's interest in advance.
There was both procedural and substantive unconscionability in this case. See Williams v. Walker-Thomas Furniture Co.,350 F.2d 445, [350 F.2d 445], (D.C. Circ. 1965). There was an absence of meaningful choice on the part of Spencer together with contract terms unreasonably favorable to the plaintiff, and Spencer's lack of a reasonable opportunity to understand the terms of the contract. The court must also add to this the failure of plaintiff to disclose that the Masottas were the real lenders, not the plaintiff.
Defendant's Exhibit 6 showed her monthly income was $1126.67. This was a handwritten loan application. She owed $1011 monthly to People's Bank on a first mortgage. Her income was supported by Plaintiff's Exhibit C showing $620 for a two week period. A typed loan application at the July 1990 closing showed a monthly income of $3300 but defendant said she was not permitted to read that application carefully before signing it and did not realize the $3300 monthly income figure was shown. The disparity between the two exhibits on income required plaintiff to inquire about defendant's finances but it did not, preferring to treat the mortgage as a Class "C" category in which no income verification is undertaken by plaintiff. It is CT Page 493 obvious from the amount of employment income ($115.67) remaining after paying People's Bank $1011 on its first mortgage, the unreliable monthly rental income available to pay ordinary living expenses, the defendant would never be able to make the requisite balloon payment at the end of one year. Furthermore, defendant was required to pay ten points in prepaid finance charges upon the original $30,000 transaction and $4400 plus transaction costs of $702 on the second transaction.
Plaintiff cannot escape the charge of unconscionability by claiming, among other things, that a Class "C" mortgagor does not require income verification. Plaintiff certainly should have been alerted by the above figures that careful check of defendant's income should have been made. Calling defendant a Class "C" borrower does not absolve plaintiff from unconscionability. If anything, it strengthens the charge under the circumstances of this case. See Williams, supra, at p. 448. Adding all of the factors together, including the percentage rate charged, the court finds the mortgage at hand was unconscionable.
 IV
Defendant next claims a violation of plaintiff of the TILA statute, Truth in Lending Act, by its failure to include as a finance charge the amount attributed by it to future assignment recording fees. See Cheshire Mortgage Services, Inc. v. Montes,223 Conn. 82, 94. Attorney Ginsberg in both mortgage transactions (July 1990 and July 1991) charged an additional $20 to record a future assignment of the 1990 mortgage and $15 for third party future assignments of the 1991 mortgage.
The failure to include the assignment recording fees withheld in each of the mortgage transactions led to understating the finance charge in the second transaction by a total of $35.00. As Cheshire, p. 102, points out, "once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability."
15 U.S.C.A. Section 1602(u) defines a "material disclosure" to include "the annual percentage rate, the method of determining the finance charge . . . the amount of the finance charge, the amount to be financed. . ." By failing to include the assignment recording fees in the finance charges, plaintiff underdisclosed the amount of the finance charge itself, CT Page 494 violating 15 U.S.C.A. Section 1638(a)(3) and12 C.F.R. § 226.18(e). The understatement of the finance charge results in an understatement of the annual percentage rate, violating15 U.S.C.A. Section 1638(a)(4) and 13 C.F.R. § 226.1818(e). Moreover the amount financed is overstated because it includes the $35 that should be part of the finance charges, violating15 U.S.C.A. Section 1638(a)(2) and 12 C.F.R. § 226.18(b). See Cheshire, p. 101.
Plaintiff did not accept defendant's rescission and therefore must face the consequences of that decision.
Plaintiff's failure to include the assignment recording fees in the finance charges puts into motion consequences which can only be described as disastrous to it. See In Re Brown,110 B.R. at 861. Pursuant to 15 U.S.C.A. Section 1635(a)(f) and12 C.F.R. § 226.23(a)(3), its failure accurately to provide the "material disclosures" required by TILA authorized defendant to rescind the transaction at any time within three years from its consummation. Cheshire, supra, at 102. Defendant exercised her right to rescind within three years. Plaintiff's failure to acknowledge or properly to act thereon within twenty days allotted by statute, its security interest terminated, and the mortgage cannot be foreclosed. In addition defendant is relieved from any liability to pay finance charges, a statutory penalty up to $1000 is incurred, actual damages and reasonable attorneys' fees for defendant's counsel.15 U.S.C.A. Section 1635(b); 12 C.F.R. § 226.23(d)(1);15 U.S.C.A. Section 1640(a)(1)(2)(A)(l).
15 U.S.C.A. Section 1635(b) does not require the tender of restitution as a condition preceding its exercise of rescission. Notice is all that is necessary, which defendant gave (defendant's Exhibit 22). Plaintiff's failure to respond to the notice destroys plaintiff's security interest, and the foreclosure of the mortgage must be denied.
 V.
Defendant further claims that plaintiff violated General Statutes Section 36-224l by charging defendant a prepaid finance charge in excess of 10 per centum of the principal amount of the loan.
Defendant challenges the constitutionality of P.A. 93-130 CT Page 495 enacted on June 14, 1993, which seeks to change the definition of the phase "principal amount of the loan" in Connecticut General Statutes Section 36-224l. The case of Cheshire Mortgagev. Montes, 223 Conn. 80 (1992) was litigated under the language of the latter cited statute. The instant case was initiated in 1992 and was pending when P.A. 93-130 took effect. Defendant views the issue as a constitutional one but the court is of the opinion that it is unnecessary to consider the question of constitutionality because the issue can be resolved on the basis of a proper interpretation of P.A. 93-130. Defendant assumes that the definition in question which appears in Section (8) of P.A. 93-130 is retroactively effective. The court, however, sees it differently. The language of Section (8) reads "all loans negotiated before, on or after" June 14, 1993. While the word "before" is utilized, the statute fails to state specifically that it applies to pending actions. A retroactive interpretation that affects substantive rights, as here, is not favored by the courts. There is no doubt the new language would diminish the right of action undertaken by defendant in 1992 except for the fact it is involved in a pending action. Connecticut General Statutes Section 1-1(u) provides: "The passage or repeal of an act shall not affect any action then pending." The cases considering the construction of amending statutes, if they are to have effect on pending actions, must say so clearly. The word "before," in the court's opinion, is not so completely clear as to apply to pending actions. No doubt it may be sufficient to cover loans negotiated before 1993, subject of course in some instances, to a constitutional challenge, but it certainly cannot be described as "clear" that it applies to pending actions. If this was the intention, it would have been simple for the legislature to refer specifically to include "pending actions."
For example, in Reese v. Reese, 136 Conn. 191, 195, a divorce action brought in 1944, the statute then provided that the claim of habitual intemperance need only exist until the date of signing the complaint. In 1947, however, the statute was changed and required proof it existed until the time of separation of the parties. The separation occurred in 1942. The court found on appeal that there was no intent in the 1947 amendment to have it apply to pending actions, and goes on to point out:
 "It is of some significance that the legislature in enacting . . . a statute relating to CT Page 496 the residence required in divorce actions, expressly provided that it should apply to pending actions." (emphasis added).
There is, of course, no express provision for applying the 1993 statute (P.A. 93-130) to pending actions. See Lavieri v.Ulysses, 149 Conn. 396, 402; Michaud v. Fitzryk, 148 Conn. 447,448; Loew's Enterprises, Inc. v. International Alliance,127 Conn. 415, 418; Field v. Witt Tire,200 F.2d 74, [200 F.2d 74], 77 (2d Circ.). All of these cases emphasize the importance of a clear expression of intent, not one that may be a possible or ambiguous interpretation. The following excerpt from Loew's sums it up:
 As regards the application of Chapter 309a, which was enacted after this action was begun, the contention of the plaintiff is, not that its application in this case would impair vested rights, but that it affects substantive rights and therefore is not to be construed as applying to a pending action. It is an accepted rule in the construction of statutes that, at least in so far as they affect substantive rights, the legislature is presumed to have intended that they should not apply to pending actions, unless the contrary clearly appears. Old Saybrook v. Public Utilities Commission, 100 Conn. 322, 325, 124 A. 33. On the other hand, as regards statutes which are general in their terms and affect matters of procedure, the presumption is that they are intended to apply in all actions, whether pending or not. Hine v. Belden, 27 Conn. 384, 391; O'Brien v. Flint, 74 Conn. 502, 509, 51 A. 547; Zalewski v. Waterbury Mfg. Co., 89 Conn. 46, 48, 92 A. 682. It may be questionable whether the latter presumption applies to all statutory changes which affect only remedies. The basis of the presumed intention that statutes affecting substantive rights shall not apply to pending actions is no doubt the injustice of changing the grounds upon which an action may be maintained after it has been brought. Lazarus v. Metropolitan Elevated Ry. Co., 145 N.Y. 581, 585, 40 N.E. 240. Where the nature of the relief sought is the principal CT Page 497 object of the action and so is of its substance, the same considerations might apply as in the case of statutory changes involving substantive rights. "The word `remedy' itself conceals at times an ambiguity, since changes of the form are often closely bound up with changes of the substance. . . . The problem does not permit us to ignore gradations of importance and other differences of degree. In the end, it is in considerations of good sense and justice that the solution must be found." Cardozo, J., in Matter of Berkowitz v. Arbib Houlberg, 230 N.Y. 261, 271, 130 N.E. 288.
In the absence of language in P.A. 93-130 expressly making it applicable to pending actions, the court finds that the word "before" does not connote the necessary clarity to cover the requirement of the law when it relates to pending actions.
Under Connecticut General Statutes Section 36-224l
defendant Spencer is entitled to $475 plus $2500. She is also entitled to reasonable counsel fees which the court finds under Section 36-224l(b) and court costs. See infra, Section VIII of this Memorandum. Defendant Family Financial Services, Inc. and the two Masottas are liable jointly and severally for these sums.
 VI
Defendant Spencer makes the further claim that the two Masottas are in violation of Connecticut General Statutes Sections 36-224d and 224e and do not qualify for any statutory exemption under Section 36-224c, referring to her Exhibit 19 to indicate that the Masottas were involved in more than five secondary mortgages aggregating substantially more than $100,000, which would disqualify the Masottas for a statutory exemption, the court does not have before it in evidence the details showing how these mortgages were consummated. The court therefore is not in a position to find that they were negotiated in the manner identical to what occurred here on the Spencer mortgage. All or some of them may very well have been, but the court is unable to indulge in surmise or speculation. The only mortgage loan before the court with adequate evidentiary support is this Spencer mortgage. But since this Spencer mortgage failed to comply with the requirements of Section 36-224l, the CT Page 498 Masottas are in violation of the Secondary Mortgage Act. The court has found them to be the real parties in interest on the Spencer mortgage and as such they are in the same position as Family Financial Services, Inc. The Masottas are in this case solely as parties defendant on defendant Spencer's counterclaim. They are not seeking to foreclose the mortgage, but if they were, they would be confronted with the law as expressed inBarrett Builders v. Miller, 215 Conn. 316, 324 which would result in their being denied assistance of the court for their failure to comply with statutory requirements, meaning of course no foreclosure of the mortgage would be allowed.
 VII
Defendant Spencer further claims the violation of Connecticut General Statutes Section 36-224b and Section 36-224l
by defendant Family Financial Services, Inc. and the defendants Masotta, its violation of the federal Truth in Lending Act (TILA) and the unconscionable terms of the mortgage executed by defendant Spencer, constitute a violation of the Connecticut's Unfair Trade Practices Act (CUTPA). Federal Trade Commission v.Sperry Hutchinson Co., 405 U.S. 233, 244-45 n. 5, provides guidance as to what is an unfair trade practice: (1) whether the practice without necessarily having been considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors, or other businesses. See Cheshire MortgageService, Inc. v. Montes, 223 Conn. 80, 105-106. All three criteria do not need to be satisfied to support a finding of unfairness but all three are sufficiently proved in this case. Nor is it necessary to prove an intent to deceive.
As in Cheshire, the violation of TILA and Section 36-224l
constitute a violation of CUTPA. The explication of TILA inCheshire, supra, pp. 107-109 need not be repeated here nor does the Connecticut Supreme Court's statement in Cheshire, pp. 109-112 require repetition here. As for the second criterion ofSperry, supra, the court does find the actions of defendant Family Financial Services, Inc. and the defendants Masotta were unfair, unethical, oppressive, and unscrupulous. The result is that these violations caused substantial injury to defendant CT Page 499 Spencer and were unconscionable.
The remedy under CUTPA is to recover actual damages (Section 42-110b), recovery costs (subsection (d)) and injunctive or other equitable relief. Cheshire, p. 115. Prepaid finance charges in excess of statutory limit of Section 36-224l(b) which amounts to $475 plus $2500 plus costs and reasonable attorney's fees. See Section VIII of this Memoranduminfra.
 VIII
On the complaint of Family Financial Services, Inc., judgment is entered in favor of defendant Carmen Spencer.
Under Section V of this Memorandum the court finds the defendant Spencer is entitled under her counterclaim to recover a total of $2975 from defendant Family Financial Services, Inc., Aglino Masotta and Edward Masotta. Judgment may enter for this amount plus other sums hereafter specified.
Under the usury statutes Connecticut General Statutes Sections 37-4 and 37-9 it would appear that Section 37-9(3) applies to exempt the mortgage from usury. There seems to be no doubt that whoever was the real party in interest in granting the mortgage, whether Family Financial Services or the Masottas, the mortgage has to be considered bona fide in its intent to create a mortgage even though in so doing, it is subject to certain other legal violations that make it unenforceable. SeeAssociated East Mortgage Co. v. Highland Park, Inc.,172 Conn. 395, 405.
Under TILA, 15 U.S.C.A. Section 1635b and12 C.F.R. § 226.23(d), the defendant Family Financial Services, Inc. and the Masottas understated the finance charge by a total of $35 (two recording fees for mortgage assignments). See Cheshire, supra, p. 102. This is a material failure to disclose and justified rescission which occurred within three years (June 4, 1993). It is therefore a violation of TILA and of Connecticut General Statutes Section 36-224l because it exceeded the statutory cap allowable for prepaid finance charges. In addition the security interest of the mortgage becomes void upon rescission which then prevents foreclosure of the mortgage. Under the Secondary Mortgage Loan Act, Section 36-224l(b) the defendants (excluding of course defendant Spencer) must pay Spencer $475 plus $2500 CT Page 500 plus reasonable attorney's fees as hereafter specified.
Under Section 42-110a et seq. (CUTPA), defendant Family Financial Services, Inc. and the Masottas by violating TILA and Section 36-224l, caused substantial injury to Spencer, the counterclaimant. See Cheshire, supra, pp. 113-114. Spencer is entitled to recover actual damages, plus costs and reasonable attorney's fees. In addition Spencer is entitled to an injunction, which the court hereby grants, against Family Financial Services, Inc. and the Masottas from pursuing now or hereafter any relief or foreclosure of the mortgage and the mortgage debt which are the subject of this litigation, and the court so orders such an injunction. See, for example, Section 42-110g(a) and Section 42a-2-302. The court also finds that Spencer is entitled to reasonable attorney's fees which it finds to be $20,000. In light of the loss of the mortgage debt by the Masottas and the nominal mortgagee Family Financial Services, Inc., the court does not believe punitive damages are warranted.
 IX
This is a somewhat complex case and the court therefore will allow counsel on both sides to present its written suggested changes to any portion of this Memorandum. Such changes, if any, shall be very specific and succinct and shall refer to page numbers. They must be arranged chronologically by page numbers and shall quote the portion or portions of the page to which they are addressed. This is not an invitation or option to retry the case. Any attempt to do so will be rejected. The court reserves the right to make such changes as it deems proper after considering counsel's written presentations, and will thereafter file a "final form" of Memorandum. This is of course an unusual procedure designed to reach the fairest possible result based upon the evidence in the case.
Each counsel will notify the court by letter if either side plans to forward such proposed changes and if either side does, to forward them to arrive at court no later than February 10, 1995. If either side does not wish to file anything, it must forward a letter stating so. Once the "final form" of Memorandum is filed by the court, that will be the controlling judgment in this case. Late presentations of either counsel will not be considered. CT Page 501
GEORGE A. SADEN STATE TRIAL REFEREE